1

2

**IN THE UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WISCONSIN**

3

4

5

6

7

8

9

10

| | |
|---|---|
| Angela Midthun-Hensen and Tony Hensen, as representatives of their minor daughter, K.H., and on behalf of all others similarly situated, | Case No. ____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| v. | |
| Group Health Cooperative of South Central Wisconsin, Inc., | |
| Defendant. | |

11

12

13

14

15

This class action lawsuit is against Defendant Group Health Cooperative of South Central Wisconsin, Inc. ("GHC") for violating the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act ("Parity Act"), 29 U.S.C. § 1185a and as prohibited under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq.

16

17

18

19

20

21

The Plaintiffs are Angela Midthun-Hensen and Tony Hensen, as the representatives of their minor daughter, K.H.,[1] and on behalf of all others similarly situated. Based on the best of Plaintiffs' knowledge, information, and belief formed after a reasonable inquiry under the circumstances, by and through their undersigned counsel by way of Class Action Complaint against GHC, Plaintiffs hereby allege as follows:

22

23

24

25

26

---

[1] The name of the minor child, K.H., is abbreviated in the public version of this Complaint to comply with the Health Insurance Portability and Accountability Act of 1996 and to protect the confidentiality and privacy of the child diagnosed with autism. The name of the minor child is known to GHC and will be disclosed to the Court with a confidential sealed version of the Complaint, as necessary.

## NATURE OF CASE

### A. Autism Spectrum Disorder

1.      Autism Spectrum Disorder ("ASD") is defined by the *Diagnostic and Statistical Manual of Mental Disorders* (5th ed.; American Psychiatric Association, 2013). The diagnosis of ASD is characterized by persistent deficits in social communication and social interaction across multiple contexts. ASD is manifested by deficits in social-emotional reciprocity, deficits in non-verbal communication behaviors used for social interaction, and deficits in developing, maintaining, and understanding relationships. The severity of ASD is based on social communication impairments and restrictive, repetitive patterns of behavior. Recent studies reveal autism prevalence among children in the United States has climbed to 1 in 40 children ages 3 to 17.

2.      Plaintiffs' daughter, K.H., is thirteen years old and has the primary diagnosis of ASD.  K.H.'s autism symptoms include development speech delay, inadequate social skills, and poor motor planning and function. K.H. works hard to gain skills that are easily attainable by her peers. Due to her ASD, she struggles with the daily tasks of dressing, personal hygiene, social interaction, and other common every-day activities. As K.H. has gotten older, she has become more aware that she is different from many of her peers and family members, and consequently, has become more prone to outbursts and self-harm. K.H.'s lack of social awareness and speech comprehension impede her ability to make friends. As any thirteen-year-old, K.H. wants to fit in and be accepted socially, the way she sees her classmates and peers accepted. Missing this essential social acceptance, she has started to talk negatively about herself.

3.      K.H.'s health care providers have continuously recommended that she receive treatment called Applied Behavioral Analysis ("ABA") for her ASD. ABA is generally accepted in the medical community as an effective form of treatment for minors (defined as under age 22 by Wisconsin law) with ASD. ABA is a type of therapy that focuses on improving

specific maladaptive or stereotypic behaviors and targets social skills and adaptive learning skills. The American Academy of Child and Adolescent Psychiatry ("AACAP") empirical reports state that of all clinical, non-educational interventions, ABA has been the most widely shown in scientific research to improve the ability of autism patients to adapt to their environment and engage with those around them.

4.     K.H. has been receiving ABA to treat her ASD symptoms. She started speech therapy in May 2017 and has continued to make progress. K.H.'s speech therapist recommended that K.H. have an Occupational Therapy ("OT") Evaluation and treatment to address the delays K.H. experiences in developing her motor and self-help skills. As a result of the assessment and K.H.'s providers' direction, K.H. requested GHC—the health-funded cooperative association and group health plan administrator for Plaintiffs' Plan, described more fully below—to approve OT treatment for K.H. in October 2018.

5.     Children with ASD have a range of occupational performance challenges that interfere with their meaningful participation in school, home, and social activities. A predominant characteristic of autism that is often the focus of intervention is the child's sensory processing of another person's gestures to communicate or relate to others with eye contact. Occupational therapists focus on enhancing a child's sensory processing, social behavioral performance, self-care, and participation in play. The role of OT in the treatment of children with ASD is structured as an intervention associated with activities of daily living. This treatment includes therapy addressing the child's ability to get dressed by themselves and engage in personal hygiene, with a particular focus on increasing the child's ability to live more independently and decrease the need for one-on-one assistance. The foundational skills of OT allow children to participate in other critical development activities, such as education and play. A child's successful completion of OT enhances a pathway for children to develop life skills, modulate behavior, and participate in social interaction.

6.     Children with autism present problems in receptive, expressive, and pragmatic language. Because deficits in language and communication are acknowledged impediments to a child's progress in education and social settings, children with autism benefit from speech and language therapy.

**B. <u>GHC Denied Coverage of Speech Therapy and OT Treatment for K.H.</u>**

7.     In January 2019, GHC denied Plaintiffs' request for coverage for K.H.'s Speech and Language Therapy ("speech therapy"). GHC stated its reason for denial was that speech therapy is not evidence-based treatment for the core deficits of ASD for children ages 10 and above, and, accordingly, speech therapy is not a covered benefit under the terms of the group policy.

8.     The same month, on January 4, 2019, GHC issued its decision denying coverage of OT for K.H.'s autism. The reason GHC stated for denial was that OT for treating ASD is considered experimental and investigational because it is not an evidence-based treatment for autism. Accordingly, GHC excluded OT from coverage under the terms of the Plaintiffs' group health benefits package.

9.     The Plaintiffs' subsequent appeals of these denials for both speech therapy and OT were denied by GHC. K.H.'s request for external review under the terms of the group policy was rejected on the grounds that speech therapy and OT for K.H. were not covered benefits under the terms of the Plaintiffs' group policy.

10.     GHC stated that the criteria it used as the premise for denying speech therapy and OT coverage was its own medical policy, GHC-SCW Medical Policy CM.121.  By developing, adopting, and applying GHC-SCW Medical Policy CM.121 ("Policy 121") to justify denial of medically necessary covered benefits to K.H. and to other plan and group members and beneficiaries similarly situated, GHC is administering its plans for its own financial benefit rather than the benefit of the plan members, subscribers, and beneficiaries.

- 4 -

11.     GHC's exclusion of coverage of speech therapy and OT benefits for children with autism violates the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"), codified at 29 U.S.C. §11858a. GHC Policy 121's exclusion is unenforceable as a matter of federal law, and GHC's application of it to deny coverage to Plaintiffs' daughter, K.H., breached GHC's fiduciary duties as the Plan administrator under the Employment Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §1001, *et. seq.* GHC's denial of benefits for K.H. and all others similarly situated also violates Wisconsin Statutes Annotated §632.895(12m), which mandates health coverage for treatment of ASD. W.S.A. §448.96(4) and (5) specifically defines occupational therapy as a covered service. Speech therapy is a recognized treatment for children with autism. W.S.A. §632.895(12m)(b). Accordingly, the GHC exclusions and Policy 121 are unenforceable as a matter of both federal and state law and are breaches of GHC's fiduciary duties as the Administrator of the Group Plan.

12.     Through this action, Plaintiffs, on behalf of K.H. and all others similarly situated, seek to enforce their rights under the employee welfare benefit plan per ERISA, the Federal Parity Act, and Wisconsin's mandated autism benefits, which includes coverage for the treatment of ASD without limitations or exclusions.

## **PARTIES**

13.     Plaintiff K.H. is the thirteen-year-old daughter and dependent of Angela Midthun-Hensen and Tony Hensen. Angela Midthun-Hensen is a subscriber and beneficiary, as defined by ERISA (Section 3(8), 29 U.S.C. §1002(a)) of the GHC Welfare Benefit Plan. Angela Midthun-Hensen, Tony Hensen, and K.H. are insured as beneficiaries under the GHC Large Employer Group Health Policy ("Policy"). The Policy is a cooperative self-funded large group policy sponsored by Plaintiffs' employer, Verona Area School District. The 2018 HMO Large Employer Group Plan is governed by ERISA and is administered by GHC.

14.     GHC is a Wisconsin health-funded cooperative association organized for its members, which include school districts. GHC's health plans are regulated by the Commissioner of Insurance, State of Wisconsin. GHC also acts as the administrator of the group health plans that it sells to various entities. The services covered by GHC's health plans are for services that are "medically necessary," which is defined as those services that are consistent with generally accepted standards of medical practices. As the Administrator of the Plaintiffs' group policy, GHC has developed internal policies and practices to facilitate its coverage denials for autism services as stated in Policy 121.

15.     As the Administrator for the Policy and other Plans issued by GHC, all responsibility for making final and binding coverage determinations under the Policy and plans belongs to GHC.

16.     Based on GHC's role in making benefit and coverage determinations under the Policy, and other plans administered by GHC, GHC is a Fiduciary under ERISA, and accordingly, is responsible for discharging its duties solely in the interest of Plan participants, beneficiaries and their dependents.  This Fiduciary responsibility includes ensuring that each plan GHC administers complies with ERISA and its Parity requirements.

## JURISDICTION AND VENUE

17.     GHC's actions in creating, maintaining, and administering the group health plans are governed by ERISA, 29 U.S.C. §1001, *et. seq.*, the Federal Parity Act, and Wisconsin mandated health treatment and coverage obligations. This Court has subject matter jurisdiction under 28 U.S.C. §1331 ("Federal Question Jurisdiction"). Jurisdiction arises under ERISA. 29 U.S.C. §1132(e)(1).

18.     Venue is appropriate in this District. GHC administers the Group Plans in this District and conducts significant operations here. GHC is also headquartered in this Judicial District. 29 U.S.C. §1132(e)(2).

1    19.    In conformity with 29 U.S.C. §1132(h), Plaintiffs served this Complaint by

2    certified mail on the Secretary of Labor and the Secretary of the Treasury.

3    20.    This Court has supplemental jurisdiction over Plaintiffs' state law claims against

4    GHC because these claims are so interrelated to Plaintiffs' federal claims that the state law

5    claims form a part of the same case or controversy under Article III of the United States

6    Constitution. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C.

7    §1367.

8    **FACTS COMMON TO ALL CLAIMS FOR RELIEF CONTAINED IN THIS CLASS**
     **ACTION COMPLAINT**
9

10   **A. Behavioral Health and Autism are Mandated Benefits in the GHC Group Plans.**

11   21.    Health insurance plans sold in Wisconsin include mandated benefits. Both the

12   Federal Parity Act and Wisconsin law specifically include autism as a covered benefit.

13   22.    Section 512(b) of the Parity Act amends §2705 of the Public Health Service Act,

14   codified at 42 U.S.C. §300gg-26. This statute applies to group health plans or health insurance

15   plans offering group health insurance coverage that provide both medical and mental health as

16   well as substance use disorder benefits. 42 U.S.C. §300gg-26(a)(1). In the present case, GHC

17   supplies group health insurance coverage as a health insurance issuer under the terms of the

18   Federal Parity Act.

19   23.    Federal Parity Law preempts state laws to the extent the state law standards or

20   requirements prevent the application of the requirements of the Federal Parity Act.

21   24.    GHC's decision as Plan Administrator in denying benefits to K.H. imposes

22   arbitrary treatment limitations within the meaning of the Federal Parity Act. *See* 29 C.F.R.

23   §2590.712. The Group Plan issued by GHC covers ABA services. Because autism is a covered

24   benefit under the Group Plan, any limitation on autism services must be based upon recognized

25   medical management standards. There is no language in the federal or Wisconsin statutory

26

schemes that would permit GHC to deny coverage for speech therapy to children under the age of 10 or deny coverage for OT treatment on the grounds that it is experimental.

25.     Plaintiffs' Group Plan, created and administered by GHC, explicitly covers ASD treatment as a benefit at all levels of care. ASD treatment is defined as "intensive-level services and non-intensive-level services for Autism Spectrum Disorder as classified in the Diagnostic and Statistical Manual of Mental Disorders ("DSM") published by the American Psychiatric Association ("APA")."

**B. Denial of Coverage.**

26.     Although ASD treatment is expressly covered, the GHC Group Plan excludes coverage for "experimental, investigational or unproven services" that meet specified criteria. The exclusion says nothing about limiting ASD treatment for speech therapy for children over 10 years old or that OT for persons with ASD is experimental. GHC discriminates against children over 10 years old based solely on age.

27.     Plaintiffs have sought authorization from GHC for coverage of OT and speech therapy for K.H. Despite numerous requests and repeated appeals, including communications directly to GHC from K.H.'s providers, GHC consistently denied coverage based on its Policy 121, which states that speech therapy is ineffective for children over the age of 10. GHC unilaterally interprets OT as "experimental" notwithstanding the medical necessity of OT and its proven effectiveness for children with autism. Only on September 8, 2021 did GHC finally authorize individual speech therapy one time per week for K.H.

28.     Under the Plaintiffs' insurance policy's Certificate of Coverage, both speech therapy and OT are included as benefits for children diagnosed with autism. K.H.'s treatment has been provided by qualified providers. These providers have created treatment plans to develop K.H.'s ability to function in social, communication, and functional skills. She has made progress against her stated goals and the speech therapy and OT have been successful in addressing the core characteristics of her autism.

29.     GHC's April 25, 2019 denial of Plaintiffs' appeal letter stated as follows:

"The decisions were based on the determination that speech and language evaluations and therapy are not evidence-based treatment for the core deficits of autism spectrum disorder for children ages 10 and above according to the National Standards Project, National Autism Center (2015) and is not a covered benefit. The criteria used in this decision was GHC-SCW Medical Policy CM.121. Additionally, occupational therapy for the treatment of autism spectrum disorders is considered experimental and investigational because it is not an evidence-based treatment for autism. Please reference your 2018 HMO Member Certificate, Article VI: Exclusions and Limitations, Section A. Paragraph 12 on page 79. Group Health Cooperative of South Central Wisconsin provides a wide range of benefits and services. However, these benefits are not without limitation."

30.     The Plaintiffs' subsequent request for external review was denied on September 19, 2019 where Maximus Federal Services stated that "the denial was based on a provision of your health plan contract; specifically regarding your benefit coverage and/or exclusions… and did not include medical judgment."

31.     GHC administers the health benefits under the Group Plan. GHC knows or should know that its Policy 121 and its practice to enforce it by excluding treatment and benefits for children with Autism is baseless, arbitrary, and contrary to law.  GHC's denial of treatment as alleged herein was not the result of a deliberate, principled reasoning process. GHC's denial of treatment was not made "solely in the interest of the participants and beneficiaries and… for the exclusive purpose of… providing benefits to the participants and their beneficiaries as required by …" ERISA. 29 U.S.C. §1104(A)(1).

32.     By applying and enforcing its medical policy to exclude speech therapy and OT from coverage, GHC has rendered the Group Plan's coverage for autism treatment a mere matter of discretion. GHC's interpretation of the Group Plan language precludes coverage for the most effective treatment for K.H. and other children with autism. K.H. and all other persons

similarly situated are denied medically necessary treatment benefits under all the Group Plans administered by GHC.

33. GHC's denial of coverage to K.H. and others similarly situated is wrong and causes injury to the child. As an ERISA Fiduciary, GHC owes the participants, subscribers and beneficiaries and dependents of the Plans it administers various fiduciary duties, including the duties of prudence, due-care, and loyalty. ERISA specifies that fiduciaries must discharge their duties solely in the interests of Plan subscribers, participants, beneficiaries and dependents "in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with the provisions of ERISA." 29 U.S.C. §1104. Accordingly, GHC owes all its Plan participants, subscribers, beneficiaries, and dependents a fiduciary duty to comply with ERISA and Wisconsin's state-mandated health benefits. GHC must further act as a fiduciary by not enforcing Plan terms that create illusory benefits or violate federal or state law.

34. Without coverage from GHC, Plaintiffs cannot afford to pay for more than pieces of K.H.'s speech therapy and OT. K.H. is unable to obtain complete treatment, which she desperately needs. Because K.H. was not able to receive the requisite OT and speech therapy, she has occasionally decompensated, acted out, and incurred setbacks in her physical, social, and mental development due to lack of ongoing treatment.  Because continued and complete treatment is critical to modify the behaviors brought on by ASD, time is of the essence.

35. GHC's coverage denial for speech therapy is exactly what GHC promised participants it would not do on page 5 (non-discrimination notice) of its Plan marketed to the public:

> "Group Health Cooperative of South Central Wisconsin (GHC-SCW) complies with applicable Federal civil rights laws and does not discriminate on the basis of … age… GHC-SWC does not exclude people or treat them differently because of … age."

Contrary to GHC's published representations to induce the public to purchase its benefits, GHC, instead, discriminated against children based on their age.

**C. GHC's Coverage Criteria for Speech Therapy and OT Used in GHC Coverage Decisions Fall Below the Generally Accepted Standards of Care for ASD.**

36.   GHC's coverage criteria contained in Policy 121 (2009) for ASD services does not meet the standard of care generally accepted by behavioral health professionals. The generally accepted standard of care for children with autism includes speech therapy treatment without regard to age and OT treatment.

37.   GHC's coverage criteria for speech therapy is inconsistent with generally accepted medical practices because it arbitrarily denies coverage for speech therapy when a child becomes 10 years old. The association of the American Speech-Language pathologists, ASHA, conducted a comprehensive literature review of over 1,000 published studies from 1990-2011. The resulting publication, *Evidence-Based Practices for Children, Youth, and Young Adults with Autism Spectrum Disorder* (2014), focuses on communication and social outcomes in young people with ASD, including youth up to the age of 22.

Among the practices that met the criteria for evidence-based speech therapy practices are:

- Social Skills Training: Specifically, "instruction designed to teach learners with autism spectrum disorders ways to appropriately interact with peers, adults and other individuals. Most social skills meetings include instruction on basic concepts… and feedback to help learners with ASD acquire and practice communication, play or social skills to promote positive interactions with peers." There were numerous studies that showed the clinical benefit of this intervention, including 7 group studies and 8 single case studies.
- Prompting: Verbal or gestural assistance given to patient to help them acquire or engage in a targeted behavior or skill.
- Social Narratives: Social narratives that describe social situations by highlighting relevant cues and offer examples of appropriate responses.

38.   Evidence-based treatments for speech therapy and speech intervention continue beyond a child's tenth year. Progress reports submitted by Plaintiffs to GHC during the appeal

process revealed that K.H. benefited from speech intervention therapy. They also show that she continued to need full speech therapy treatment to develop her functioning skills in social pragmatic language and remedy her core deficits in speech related to her autism diagnosis.

39. The evidence-based research that OT is effective for children and adolescents with ASD is well-documented. OT treatment and activities promote social interaction and problem-solving, and address specific skill acquisitions. In fact, the National Standards Project, Phase 2 (2015) ("NSP2") supports the OT interventions K.H. receives from her autism providers. That publication includes guidance regarding intervention targets for treating people with ASD. Among the targets suggested are motor skills, self-regulation, and personal responsibility. These are the very targets that K.H. has been working on in her OT treatment, and she has been progressing and meeting her goals. According to the NSP2, targets used in treatment should increase developmentally appropriate skills. There is nothing in NSP2 that suggests its treatment is deemed "experimental" as insisted by GHC in Policy 121.

40. *Current Procedural Terminology Current CPT (CPT)* is a listing of descriptive terms and identifying codes for reporting medical and behavioral health services and procedures performed by physicians and other health care providers. The CPT codes are permanent medical codes that are used with the Centers for Medicare and Medicaid Services and all insurance payors throughout the country to identify and pay for services supplied to children with autism.

41. The CPT code is issued, copyrighted and maintained by the American Medical Association. The inclusion of a description and its associated five digit code number in the CPT Category 1 code set is based on the determination that the procedural service is consistent with contemporary medical practice and is performed by many practitioners in clinical practices and multiple locations. Both occupational therapy and speech therapy for children with autism are Category 1 codes identified in the American Medical Association CPT codebook. As

1   Category 1 procedures, both treatments meet the AMA clinical efficacy criteria and are

2   documented in literature that meets requirements set forth in the CPT code application process.

3        42.     Speech therapy for children with autism is not limited by age under any Category

4   1 CPT code.  Occupational therapy for children with autism is widely accepted and as a

5   Category 1 code, meets all criteria for current medical practice and is documented in literature

6   that meets the requirements set forth by the American Medical Association to establish the CPT

7   code designation.

8        43.     The generally accepted standards of medical practice for behavioral health and

9   persons with autism disorders do not impose artificial time limits on treatment. By contrast, the

10  age-based time limit imposed by GHC's Policy 121 is arbitrary and not patient-centered.

11  Individual patients progress at different rates and not according to outdated "cookie cutter"

12  templates such as Policy 121.

13  **D.  GHC's decision to deny coverage for speech therapy for children older than 9 years**

14  **and to deny coverage for OT as "experimental" are decisions that are improperly infected**

15  **by financial considerations.**

16       44.     As an ERISA Plan Fiduciary, GHC is required to interpret Plan terms in a manner

17  to ensure that the ERISA Plans it administers comply with ERISA requirements. GHC is

18  prohibited as an ERISA Fiduciary from applying Plan provisions that restrict coverage or

19  violate ERISA's Parity provisions. GHC's Policy 121, applicable to all plans administered by

20  GHC, violates the coverage mandates of ERISA Parity and the Wisconsin Health Care

21  Coverage mandates.

22       45.     Through the denial of coverage for OT and speech therapy, GHC saved

23  substantial funds to achieve its published financial goal to exceed minimum reserves under the

24  Wisconsin insurance laws. GHC saved money at the expense of the medically necessary care

25  and treatment of K.H. and all other beneficiaries similarly situated in Wisconsin. As a result, in

26  the case of K.H., her parents have been paying for pieces of the medically necessary OT and

1  speech therapy treatment for K.H. out of their own pockets. K.H.'s parents cannot afford to pay

2  for the complete medically necessary treatment K.H. requires and to which she is entitled under

3  the Plan. Without Plaintiffs paying for these services, K.H. would not have received any level

4  of care needed for treating her autism.

5    46. In the course of the contractual relationship between GHC and its Subscriber,

6  Plaintiff Angela Midthun-Hensen, a power imbalance exists similar to that between a classical

7  commercial insurer and a policy holder. Under GHC's model, the risk to Subscribers is that

8  GHC focuses on reducing aggregate costs while, simultaneously, refusing to supply the

9  treatment needs of its individual subscribers and dependents. This is an economic model of

10 healthcare profit rather than a patient's health focused model.

11   47. These financial incentives, referenced herein, have adversely infected GHC's

12 development of its coverage policies for the purpose of rationing access to ASD treatment solely

13 based on monetary considerations.

14  **E.** **Unlawful Age Discrimination - Parity Act**

15   48. GHC's Plan and Policy violate ERISA by running afoul of the Parity Act. The

16 Parity Act was made part of ERISA and is codified at 29 U.S.C. §1185a. The Parity Act

17 prohibits placing treatment limitations on mental health benefits that are more restrictive than

18 treatment limitations placed on medical/surgical benefits. This includes limitations on the

19 duration of treatment.

20   49. GHC limited the duration of speech therapy treatment by stopping benefits at age

21 10, thereby placing a treatment limitation on mental health benefits. GHC places no similar

22 treatment limitation on medical/surgical benefits. 29 C.F.R. §2590.712.

23   50. ERISA requires health plans offering dependent coverage to make that coverage

24 available to children until they reach the age of 26. 29 C.F.R. §2590.715-2714(a)(1). GHC's

25 Policy and Practice of denying coverage to participants and dependents for speech therapy when

26 they reach age 10 thwarts the requirement that coverage by provided until age 26.

51.     ERISA also prohibits varying the terms of a health plan by age, except for children who are age 26 or older. *Id.* GHC's interpretation of the Plan language and its Policy excluding speech therapy to children when they reach the age of 10 did exactly what it is not permitted to do – vary coverage based on age to individuals less than 26 years old.

52.     Plaintiffs and the Plaintiff Class have been damaged by GHC's conduct of GHC's categorical denial of speech therapy based on age and OT based on the erroneous determination that OT is experimental.

### CLASS CLAIMS

53.     Plaintiffs seek in this Action to end GHC's standard practice of health coverage discrimination against K.H. and other similarly situated enrollees with ASD who need speech therapy treatment and OT treatment deemed medically necessary by their respective health care providers. The Plaintiffs also seek to enforce the Federal Mental Health Parity Act through ERISA regarding the terms of the GHC Policy and Plan, and to end discriminatory practices.

54.     GHC created Policy 121 in November 2009. GHC has never amended Policy 121, notwithstanding the universally recognized fact that "evidence on autism treatments is frequently updated." *See* Wisconsin Office of Commissioner of Insurance, Autism Mandate 2019. At the time Wisconsin promulgated its regulations implementing mandated autism coverage, the Insurance Commissioner recognized that "the research and literature in the realm of autism treatments is rapidly evolving. The working group recommended defining 'evidence-based' and 'behavioral' rather than creating a list of approved therapies that could readily become outdated." Based on this guidance, policies such as GHC's Policy 121 should not be utilized. A treatment that may have been "experimental" in 2009 is today an evidence-based best practice treatment for children with ASD.

55.     Yet, it is GHC's announced policy and practice to continue to apply its medical policy (Policy 121) to all the health Plans it administers. Since November 2009, GHC enforces

this exclusive treatment policy. These coverage exclusions violate Subscriber contract rights and federal and state Parity protections.

56.     GHC enforces the same Policy 121 exclusions in other Plans it administers. Group Plans administered by GHC contain the same illegal coverage exclusions. Policy 121 wrongfully denies speech therapy and OT for children with autism. Accordingly, GHC has harmed the Class Members in the same way as it has harmed K.H.

57.     To address these Parity and discriminatory violations, Plaintiffs, as a representative of their minor daughter, K.H., seek relief on her behalf and on behalf of the following Class:

> "All participants, beneficiaries, subscribers and dependents enrolled in the GHC Large Group HMO Plans, Large Group POS Plans, and Large Group PPO Plans administered by GHC that contain an exclusion of coverage for applied behavioral analysis, speech therapy for children age 10 or older and/or occupational therapy whose requests for coverage for these services were denied by GHC based on Policy 121."

58.     Common Class claims and issues exist for the class, including, but not limited to the following:

A.     Whether GHC is an ERISA Fiduciary;

B.     Whether GHC breached its obligation as Plan Administrator by arbitrarily denying coverage for ASD services;

C.     Whether the coverage exclusions referenced herein violate ERISA's Federal Parity Protections (29 U.S.C. §1185a);

D.     Whether GHC's legal duties as the administrator of the plans prohibit it from applying Policy 121 exclusions of coverage for speech therapy and/or OT;

E.     Whether GHC's practice of denying speech therapy for children age 10 or older violates GHC's obligations as the Plan Fiduciary;

F.    Whether GHC must reimburse plaintiffs for out-of-pocket expenses for the limited ASD treatment they were able to afford;

G.    Whether the remedy authorized by 29 U.S.C. §502(a)(1)(B) is adequate to make the Plaintiff and Plaintiff Class whole; and

H.    Whether the Plaintiff and Plaintiff Class are entitled to recover further equitable relief as that term is defined by 29 U.S.C §1132(a)(3).

59.    The members of the Class are so numerous that joinder of all members is impracticable. GHC generates revenue in excess of $400 million each year from its various health plans. The number and identity of Class Members is solely within the possession and knowledge of GHC. The Plaintiffs believe in good faith that the Class consists of at least hundreds, if not thousands, of Plan Subscribers, Beneficiaries, and Dependents.

60.    Common questions of law and fact exist as to all members of the Class and predominate over questions effecting solely individual members of the Class, including the Class Action Claims and issues listed herein.

61.    Plaintiffs' claims are typical of the claims of the Class Members because, as alleged herein, the GHC Policy 121 exclusion of coverage was applied to deny coverage to Plaintiffs' daughter, K.H., and was also applied to deny coverage to other members of the Class.

62.    Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiff is committed to the vigorous prosecution of this Action and has retained counsel competent and experienced in Class Action and health insurance and parity-related litigation. The Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

63.    A Class Action is superior to other available methods for the fair efficient adjudication of this controversy. Further, the expense and burden of individual litigation make it irrational for Class Members to individually redress the harm done to each of them. Moreover, because this case involves Class Members who suffer from behavioral health conditions and more specifically ASD, and because those who suffer from such conditions continue to

experience social stigma, it is unlikely that many Class Members would be willing to have their conditions become public knowledge by filing individual lawsuits. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a Class Action.

**FIRST CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS: IMPROPER DENIAL OF COVERAGE AND BENEFITS – BREACH OF FIDUCIARY DUTY**

64.      Plaintiffs incorporate by reference the allegations of this Complaint as if fully set forth herein.

65.      This claim is brought pursuant to 29 U.S.C. §1132(a)(1)(B).

66.      As an ERISA Fiduciary, GHC was required to discharge its duties in compliance with ERISA's Parity provisions. ERISA, together with Wisconsin mandated benefits, required GHC to discharge its duties in the interests of the subscribers, beneficiaries, and dependents of the Group Plans. GHC is also obligated to exercise reasonable prudence and due care in making coverage decisions relating to subscribers, beneficiaries, and dependents.

67.      GHC denied benefits for speech therapy on the grounds that the treatment was not evidence-based treatment for ASD for children ages 10 and above. The criteria used by GHC in this decision was Policy 121. The Parity Act was designed to end discrimination based on age for mental health disorders in Group Plans. The Parity Act requires Plans to ensure that treatment limitations applicable to mental health are no more restrictive than the predominate treatment limitations applied to substantially all medical and surgical benefits covered by the Plan.

68.      GHC denied benefits for OT treatment of ASD as experimental and investigational and not evidence-based treatment for autism.

69.     GHC denied coverage for these treatments based upon its systematic practice of applying its Clinical Coverage Guideline Policy 121 as a categorical denial of coverage, which is more restrictive than generally accepted standards of care for treatment of children with ASD.

70.     GHC categorically applied and enforced Policy 121 against Plaintiffs' daughter, K.H., and the Class Members' plans, even though the exclusion of coverage for these autism treatments violates: (i) ERISA's Parity provisions; (ii) Wisconsin's statutory autism mandate; (iii) the prohibition of categorically excluding premier and effective autism treatment for a covered condition contrary to the best interests of the Plaintiffs' daughter and Class Members; and (iv) the fiduciary duties that GHC owes to Plaintiffs' daughter, K.H., and the members of the Class.

71.     Plaintiffs and the Members of the Class have been harmed by GHC's improper benefit and coverage denials because GHC denied coverage and benefits using its Clinical Coverage Criteria that is inconsistent with the applicable plan terms and federal and state Parity laws.

72.     Plaintiffs allege that there are ERISA Plan Agreements between the Plaintiffs and Plaintiff Class and GHC that creates obligations flowing from GHC to the Plaintiffs and Plaintiff Class. *Brew City Redevelopment Group, LLC v. The Ferchill Group*, 2006 WI App 39, ¶ 11, 289 Wis. 2d 795, 807, 714 N.W.2d 582, 588, *aff'd sub nom. Brew City Redevelopment Group, LLC v. Ferchill Group*, 2006 WI 128, ¶ 11, 297 Wis. 2d 606, 724 N.W.2d 879. Regarding K.H., the Plan includes: (i) the 2018 HMO Member Certificate: Large Employer Group (the "2018 Certificate"), whereby GHC agreed to provide health care benefits to its insureds/subscribers and their dependents. Plaintiff Angela Midthun-Hensen is insured through her employer, Verona Area School District. Plaintiffs K.H. and Tony Hensen are dependents under the 2018 Certificate; (ii) the GHC-SCW Large Group POS Certificate 2018; and (iii) the MMSD GHC-SCW Large Group PPO Certificate 2018 (collectively the "2018 Certificates").

73.    GHC failed to do what it undertook to do under the 2018 Certificates. Each Plan prohibits discrimination. Under the 2018 Certificate's Nondiscrimination Notice, GHC claims it "complies with applicable Federal civil rights laws and does not discriminate on the basis of…age [or] disability[.] GHC-SCW does not exclude people or treat them differently because of…age [or] disability[.]" 2018 Certificate, at p. 4.   GHC has discriminated and treated Plaintiffs' daughter, K.H., and the Class Members differently because of age or disability.

74.    Autism Spectrum Disorder Treatment is a covered health service under the 2018 Certificates.   Each Plan Certificate states, "Autism Spectrum Disorder Treatment" means "intensive-level services and Non-intensive-level services for Autism Spectrum Disorder as classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association." *See, e.g.,* Large Employer Group, 2018 Certificate, at A(2). "Benefits" under the Certificates means "the Covered Health Services contained in this Certificate, including any attachments to the policy.

a.    **In-Network Services and Benefits** means Covered Health Services provided by an In-Network Provider or received at an In-Network Facility. You are eligible for In-Network Services and Benefits when You select a Primary Care Provider to coordinate Your health care. It is Your responsibility to ensure that Your Primary Care Provider coordinates all of Your services by requesting Prior Authorization from GHC-SCW. You can verify that a Prior Authorization has been received by calling Your Primary Care Provider, the GHC-SCW Care Management Department or GHC-SCW Member Services.

If Medically Necessary services are not available from an In-Network Provider, you may be eligible to receive Benefits coverage from an Out-of-Network Provider if Prior Authorized by GHC-SCW. All Benefits to be paid are limited to Reasonable and Customary Fees and Charges, which may be less than the billed amount.

b.    **Out-of-Network Services and Benefits** means all services and benefits provided by an Out-of-Network Provider or received at an Out-of-Network Facility. Out-of-Network Benefits may be available if Medically Necessary services are not available from an In-Network Provider. All Out-of-Network Benefits must be Prior Authorized by GHC-SCW, except for Emergency Conditions and Urgent Conditions. All Out-of-Network Services and Benefits are limited to Reasonable

and Customary Fees and Charges, which may be less than the billed amount. For additional information, please refer to Article III: General Provisions."

2018 Large Group HMO Certificate, at A(3).

75.     Under the 2018 Certificate, "Covered Health Services" means "the specific Benefits covered under this Certificate and the Group Service Agreement when covered services are:

a.     Received in accordance with the procedures set forth in this Certificate and the Group Service Agreement;
b.     Obtained while a Member is covered under this Certificate and the Group Service Agreement;
c.     Ordered by a GHC-SCW Provider, an In-Network Provider or other properly licensed health care provider when Prior Authorized pursuant to the terms of this Certificate;
d.     Medically Necessary; and
e.     Prior Authorized, when required by GHC-SCW.

*Id.*, at A(18).

76.     The contracts exclude from coverage services that are experimental, investigational, or unproven. Under the 2018 Certificate, **"Experimental, Investigational or Unproven Services"** means "a health service, treatment, or supply used for an illness or injury which, at the time it is used, meets one or more of the following criteria:

a.     Is subject to approval by an appropriate governmental agency for the purpose it is being used for such as, but not limited to the FDA, which has not granted that approval;
b.     Is not a commonly accepted medical practice in the American medical community;
c.     Is the subject of a written investigational or research protocol;
d.     Requires a written investigational or research protocol;
e.     Requires a written informed consent by a treating facility that makes reference to it being Experimental, Investigational, educational, for a research study, or posing an uncertain outcome, or having an unusual risk;
f.     Is the subject of an ongoing FDA Phase I, II, III clinical trial;
g.     Is undergoing review by an institutional review board;
h.     Lacks recognition and endorsement of nationally accepted medical panels;
i.     Does not have the positive endorsement of supporting medical literature published in an established, peer reviewed scientific journal;

j.      Has unacceptable failure rates and side effects or poses uncertain risks and outcomes;

k.      Is being used in place of other, more conventional and proven methods of treatment;

l.      Has been disapproved by the GHC-SCW Technology Assessment Committee; or

m.    Reliable evidence shows that the consensus of opinion among experts regarding the treatment, procedure, device, drug or medicine is that further studies or clinical treatments are necessary to determine its maximum tolerated dose, toxicity, safety, or efficacy as compared with standard means of treatment or diagnosis. "Reliable evidence" shall include anything determined to be such by GHC-SCW, within the exercise of its discretion, and may include published reports and articles in the medical and scientific literature generally considered to be authoritative by the national medical professional community, the written protocol(s) used by the treating facility or the protocol(s) of another facility studying substantially the same treatment, procedure, device, drug or medicine; or the written informed consent used by the treating facility or by another facility studying substantially the same treatment, procedure, device, drug or medicine.

A procedure, treatment, supply, device or drug may be considered Experimental, Investigational or Unproven even if the Provider has performed, prescribed, recommended, ordered, or approved it, or if it is the only available procedure or treatment for the condition." *Id.*, at A(31).

77.      OT for children with ASD does not fall under the category of experimental, investigational, or unproven services, as defined above and in the 2018 Certificates.

78.      "Health Plan (or Benefit Plan or Plan)" as used in the 2018 Certificate means "the overall program of health services insured and administered by GHC-SCW." *Id.*, at A(42). "Medical Necessity/Medically Necessary" means "a service, treatment, procedure, equipment, drug, device or supply provided by a Hospital, Provider or other health care Provider that is required to identify or treat a Member's illness, disease or injury and which is, as determined by the GHC-SCW Medical Director:

a.      Consistent with the symptom(s) or diagnosis and treatment of the Member's illness, disease or injury;

b.      Appropriate under the standards of acceptable medical practice to treat that illness, disease or injury;

c.      Not solely for the convenience of the Member, Provider, Hospital, or other health care Provider; and

d.      The most appropriate service, treatment, procedure, equipment, drug, device, or supply which can be safely provided to the Member and accomplishes the desired end result in the most economical manner. This means if there is more than one medically established standard treatment approach available nationally, and these approaches are relatively equivalent in terms of proven medical outcomes, GHC-SCW will make the determination on the selected approach to be covered.

The Member's Provider makes decisions regarding service and treatment. GHC-SCW, through its Medical Director, using criteria developed by recognized sources, has the authority to determine whether a service, treatment, procedure, Prescription Drug, device or supply is Medically Necessary and eligible for coverage under the Plan." *Id.*, at A(60).

79.     The 2018 Large Group HMO Certificate states at page 45 that "Members are entitled to Covered Health Services subject to the terms and conditions of their Health Plan, as set forth in this Certificate, Benefit Summary, Summary of Benefits and Coverage and any Amendments to this Certificate." The Covered Health Services for ASD, coverage of which is required by Wis. Stat. §632.895(12m), are listed in the 2018 Certificate at pages 47-50.  The requisite treatment plans for ASD patients include therapies and plans that require "specific cognitive, social, communicative" goals.

80.     Speech therapy and OT fall within the category of cognitive, social, and communicative treatment plan therapies and goals. There is no age limitation on speech therapy. There is nothing experimental regarding OT.

81.     The reason provided by GHC on January 4, 2019 for denial of speech therapy and OT coverage was that those therapies are not evidence-based treatments for the core deficits of Autism Spectrum Disorders for children ages 10 and above, are considered experimental and investigational, and, accordingly, are not covered benefits under the terms of the group policy.

82.     GHC is required to cover the Covered Health Services unless an exclusion or limitation applies. Because speech therapy and OT for ASD are neither excluded nor limited,

and because such therapies are not Experimental, Investigational or Unproven Services, despite GHC's policy to the contrary, denial of coverage for these medically necessary therapies constitutes a breach of contract.

83.     ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in Employee Benefit Plans. Congress imposed fiduciary duties on ERISA Plan Administrators that are the highest known to the law. These fiduciary duties have attached to GHC as the Plan Administrator. As such, GHC owes the Plaintiff and Plaintiff Class Members its duty of loyalty to act in the best interest of the Plan and its beneficiaries. ERISA expressly forbids a fiduciary from "dealing with the assets of the Plan in his own interest or for his own account." 29 U.S.C. §1106(b)(1).

84.     GHC breached the fiduciary duties GHC owed to the Plaintiff and Plaintiff Class by arbitrarily and capriciously denying Plan benefits to which Plaintiff and Plaintiff Class Members where entitled. The Plaintiff and Plaintiff Class are entitled to relief and to the remedies authorized by 29 U.S.C. §502(a)(1)(B).

**SECOND CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS: THE NATURE OF THE HARM CAUSED BY GHC'S BREACH OF ITS FIDUCIARY DUTIES ENTITLES THE PLAINTIFF AND PLAINTIFF CLASS TO MONETARY COMPENSATION IN THE FORM OF SURCHARGE AS AN APPROPRIATE REMEDY**

85.     Plaintiffs hereby incorporate each of the allegations contained in this Complaint as if fully set forth herein.

86.     Plaintiffs bring this claim on behalf of their daughter, K.H., and all other persons similarly situated pursuant to 29 U.S.C. §1132(a)(3). As the plan administrator, GHC is obligated to discharge its duties in compliance with Federal Parity provisions, *see* 29 U.S.C. §1185(a), and Wisconsin law, *see* W.S.A. §185.981; and W.S.A. §632.895. GHC is obligated to carry out its duties in the interests of the plan's subscribers, beneficiaries, and dependents.

GHC is obligated to carry out its duties and exercise reasonable prudence and due care towards the Plaintiffs and the Class Members.

87.    GHC applied and categorically enforced Policy 121 in Plaintiffs' daughter, K.H., and the Class Members' plans, even though denial of coverage for speech therapy and OT violated both the federal and state ERISA Parity provisions. GHC categorically excluded these autism treatments even though studies have proven these treatments are effective treatments for the Plaintiffs and the Class Members' covered conditions. GHC's conduct and actions as alleged herein breached its fiduciary duties owed to Plaintiffs' daughter, K.H., and the members of the Class.

88.    In addition, GHC denied these effective evidence-based benefits and coverage to Plaintiffs' daughter, K.H., and the members of the Class for the purpose of reducing GHC's aggregate costs at the expense of adequately protecting the medical needs of its individual subscribers and dependents, including the Plaintiffs and the Class Members.

89.    GHC is the Plan Fiduciary. As alleged in this Complaint, GHC breached its fiduciary duty owed to the Members of the Plaintiff Class. The nature of the harm caused by GHC's breach of this duty resulted in monetary losses to the Plaintiffs and corresponding unjust enrichment to GHC. The "appropriate equitable relief" language of Section 1132(a)(3) allows Plaintiffs to seek and the Court to award make-whole money damages as an equitable remedy.

90.    Reimbursement under 29 U.S.C. § 1132(a)(1)(B) does not provide the Plaintiff and Plaintiff Class with adequate relief to remedy GHC's breach of its fiduciary duty. As a direct and proximate result of GHC's breach of its fiduciary duty, the Plaintiff and Plaintiff Class Members were harmed through (i) inability to obtain and pay for ABA therapy; (ii) forgoing medically necessary care; (iii) loss of access to care that would have rendered positive results and benefit to the quality of life of children Beneficiaries; (iv) lack of therapeutic intervention that would have prevented permanent and irreparable harm to the Plaintiff and Plaintiff Class by not receiving treatment at a time when it would have been most beneficial to

them; and (v) dissuading and preventing parents from seeking treatment for their children at the time in their lives that treatment would be most beneficial. At the same time, GHC became unjustly enriched through its arbitrary and capricious application of its illegal Policy 121 excluding autism treatments based on a child's age and alleged experimental and investigational treatments.

A. **GHC's Breach of Fiduciary Duty is Bad Faith**

91.    GHC's denial of coverage for the autism services referenced in this Complaint was made without a reasonable basis. GHC's denial of coverage was due to its adherence to financial considerations of profit, rather than to the legitimate medical needs of its subscribers and dependents.

92.    Notwithstanding GHC's November 2009 Policy 121, "When a conflict exists between the interests of an insurance company and the interests of an insured, and the insurance company has control over the claim, the insurance company has a duty to act in good faith to protect the interests of the insured. When an insurance company breaches that duty, a cause of action for bad faith is cognizable in Wisconsin." *Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 112, 325 Wis. 2d 56, 99, 784 N.W.2d 542, 563.

93.    GHC's conduct amounts to bad faith denial of coverage under Wisconsin law. The nature of the harm incurred by Plaintiff and Plaintiff Class triggers appropriate equitable relief under 29 U.S.C. § 1132(a)(3) in the form of surcharge monetary compensation. *See* <u>A.F. v. Providence Health Plan</u>, 157 F.Supp.3d 899 (D. Oregon 2016).

B. **GHC's Breach of Fiduciary Duty is also a Breach of its Duty of Good Faith and Fair Dealing.**

94.    GHC owed Plaintiffs and Plaintiff Class a duty of good faith and fair dealing under its Plan Certificates. Under ERISA and Wisconsin law, Plan documents imply good faith

and fair dealing between the parties. Here, GHC's conduct generated lifetime harm to children entitled to coverage for autism treatments.

95.     GHC breached its fiduciary duty of good faith and fair dealing owed to Plaintiffs and Plaintiff Class by, among other things, wrongfully denying autism coverage for speech therapy based on age and OT as "experimental", and failing to undertake the necessary research to understand that these therapies are accepted as best practice among medical professionals.

### THIRD CLAIM FOR RELIEF ON BEHALF OF PLAINTIFFS AND THE CLASS: WRONGFUL DENIAL OF BENEFITS UNDER WISCONSIN LAW

96.     Plaintiffs incorporate by reference each of the allegations of this Complaint as if fully set forth herein.

97.     This claim is brought pursuant to W.S.A. §632.895, Mandated Benefits and Coverage, which required GHC to provide coverage for evidence-based therapy to treat autism spectrum disorder including speech therapy and OT if prescribed by a physician.

98.     GHC denied benefits for speech therapy on the grounds that the treatment was not evidence-based treatment for ASD for children ages 10 and above. The criteria used by GHC in this decision was Policy 121.

99.     GHC denied benefits for OT treatment of ASD as experimental and investigational and not evidence-based treatment for autism.

100.     GHC denied coverage for these treatments based upon its systematic practice of applying its Clinical Coverage Guideline Policy 121, which is more restrictive than generally accepted standards of care for treatment of children with ASD.

101.     Plaintiffs and the members of the Class have been harmed by GHC's improper benefit and coverage denials because GHC denied coverage and benefits using its Clinical Coverage Criteria that is inconsistent with the applicable plan terms and federal and state Parity laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in Plaintiffs' favor and in favor of the Class against the Defendant as follows:

A. Certify the Class and appointing Plaintiffs as Class Representative and Plaintiffs' counsel as Class Counsel;

B. Declare that GHC as the Plan Administrator and Fiduciary violated Plaintiffs' rights to treatment in the manner described herein;

C.  Declare that Policy 121 as applied in excluding speech therapy and/or OT for Plaintiffs' daughter, K.H., and the Class Members is a violation of GHC's fiduciary duties as Plan Administrator and a violation of Parity provisions and, accordingly, void and unenforceable as a matter of law;

D. Order other appropriate equitable relief, including, but not limited to, the appropriate monetary award as a surcharge and order disgorgement of all premiums paid to GHC by Plaintiffs and Plaintiff Class Members, order restitution, order GHC to pay costs of treatment incurred by Plaintiffs and Plaintiff Class Members, as the Court deems just under 29 U.S.C. § 1132(a)(3);

E. Award Plaintiffs disbursements and expenses of this action, including an award of reasonable attorneys' fees in amounts to be determined by the Court;

F. Award Plaintiffs out of pocket expenses for treatment costs incurred resulting from denial of benefits under 29 U.S.C. § 1132(a)(1)(B); and

G. Grant such other and further relief as just and proper in light of the nature of the harm incurred by the Plaintiffs.

DATED this 27th day of September, 2021.

GINGRAS, THOMSEN & WACHS, LLP

By: _/s/ Paul A. Kinne_
Paul A. Kinne

SBN: 1021493
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Fax: (608) 833-2874
***Attorneys for Plaintiffs***