# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ANGELA MIDTHUN-HENSEN and TONY
HENSEN, as representatives of their minor
Daughter, K.H., and on behalf of all others
similarly situated,

       Plaintiffs,

          v.

GROUP HEALTH COOPERATIVE OF SOUTH
CENTRAL WISCONSIN,

       Defendant.

Case No. 3:21-cv-00608-SLC

---

## DEFENDANT GROUP HEALTH COOPERATIVE OF SOUTH CENTRAL WISCONSIN'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND......................................................................2

    I.     The Parties & Their Relationship............................................2

    II.    The Plan Documents & GHC's Discretion to Make Coverage Decisions .............................................................................3

    III.   The Plan's Coverage for the At-Issue Benefits.....................4

    IV.   Policy 121.................................................................................6

    V.    K.H.'s Requests for and Receipt of Benefits.........................8

        A.    2017 Appeal of Denials of Requests for Occupational Therapy.......................................................................9

        B.    2018 Appeals of Denials of Requests for Speech Therapy ....11

        C.    2019 Appeals of Denial of Requests for Speech Therapy & Occupational Therapy ................................................13

SUMMARY JUDGMENT STANDARD OF REVIEW.................................16

ARGUMENT........................................................................................16

    I.     GHC Is Entitled to Summary Judgment on Count I Because It Did Not Abuse Its Discretion in Denying Plaintiffs' Requests for Benefits. ..........................................16

        A.    The Court's review is limited to determining whether GHC's coverage decision was one reasonable interpretation of the plan documents......................................17

        B.    GHC's interpretation of the Plan's coverage terms was reasonable......................................................19

            1.     *Not Evidence-Based* .........................................20

            2.     *Experimental and Investigational*......................24

3.     *Exclusions for Habilitation Therapies and for Rehabilitation Therapies for Development Delays* ............26

II.     GHC Is Entitled to Summary Judgment on Count II Because It Did Not Breach Any Fiduciary Duties by Denying Plaintiffs' Requests For Benefits..............................................................................27

     A.     GHC could not approve requests for services that were not covered by the Plan....................................................................28

     B.     GHC did not breach any fiduciary duties in determining that the Plan did not cover the requested treatments............29

     C.     Federal and/or state law did not require GHC to approve claims that were not covered by the Plan...............................30

III.     GHC Is Entitled to Summary Judgment on Count III, Because Plaintiffs Still Have Not Identified a Federal Parity Act Violation. ...............................................................................................30

     A.     Age-based coverage...................................................................33

     B.     Coverage of routine patient care for members in clinical trials   ..........................................................................35

     C.     Coverage for chiropractic services ..........................................37

     D.     Medical coverage for speech and occupational therapy .......38

IV.     GHC Is Entitled to Summary Judgment on Count IV for Violation Of Wisconsin's Autism Mandate.........................................................40

     A.     Plaintiffs' claim under Wisconsin law fails on the merits.....40

     B.     There is no private right of action under the Wisconsin Autism Mandate.........................................................................42

V.     GHC Is Entitled to Summary Judgment on Plaintiffs' Requests for Future Benefits and a Declaratory Judgment Because Such Requests Are Moot.................................................................................43

CONCLUSION .................................................................................................44

# TABLE OF AUTHORITIES

**Federal and State Cases**

*Alice F. v. Health Care Service Corp.,*
367 F. Supp. 3d 817 (N.D. Ill. 2019)...........................................................32

*Bechtold v. Physicians Health Plan of Northern Indiana, Inc.,*
19 F.3d 322 (7th Cir. 1994). .......................................................................20

*Brill v. Lante Corp.,*
119 F.3d 1266 (7th Cir. 1997). ...................................................................16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)....................................................................................16

*Christine S. v. Blue Cross Blue Shield of New Mexico,*
428 F. Supp. 3d 1209 (D. Utah 2019). ..............................................30, 31

*Coalition for Parity, Inc. v. Sebelius,*
709 F. Supp. 2d 10 (D.D.C. 2010)..............................................................31

*Crista v. Wisconsin Physicians Service Insurance Corp.,*
No. 18-cv-365-wmc, 2021 WL 3511092 (W.D. Wis. Aug. 10, 2021)...17, 22, 25, 28, 29

*Donato v. Metropolitan Life Insurance Co.,*
19 F.3d 375 (7th Cir. 1994). .......................................................................19

*Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund,*
900 F.2d 1138 (7th Cir. 1990). .............................................................19, 23

*Gallagher v. Empire HealthChoice Assurance, Inc.,*
339 F. Supp. 3d 248 (S.D.N.Y. 2018).........................................................30

*Gallo v. Amoco Corp.,*
102 F.3d 918 (7th Cir. 1996). .....................................................................20

*Geiger v. Wisconsin Health Care Liability Insurance Plan,*
538 N.W.2d 830 (Wis. Ct. App. 1995). ......................................................42

*Grant v. Trustees of Indiana University,*
870 F.3d 562 (7th Cir. 2017). .....................................................................16

*Grube v. Daun,*
563 N.W.2d 523 (Wis. 1997). ...............................................................42, 43

*Hackett v. Xerox Corp. Long-Term Disability Income Plan,*
315 F.3d 771 (7th Cir. 2003). ........................................................................17

*Jacowski v. Kraft Heinz Foods Co.,*
No. 15-cv-657-bbc, 2016 WL 6693588 (W.D. Wis. Nov. 14, 2016). ...............18, 19, 25

*Joseph F. v. Sinclair Services Co.,*
158 F. Supp. 3d 1239 (D. Utah 2016). ...........................................................30

*Killian v. Concert Health Plan,*
742 F.3d 651 (7th Cir. 2013). ........................................................................44

*Kranzush v. Badger State Mutual Casualty Co.,*
307 N.W.2d 256 (Wis. 1981). ........................................................................42

*McNeill v. Jacobson,*
198 N.W.2d 611 (Wis. 1972). ........................................................................42

*Michael W. v. United Behavioral Health,*
420 F. Supp. 3d 1207 (D. Utah). ....................................................................32

*Morton v. Smith,*
91 F.3d 867 (7th Cir. 1996). ..........................................................................24

*Neal v. Christopher & Banks Comprehensive Major Medical Plan,*
651 F. Supp. 2d 890 (E.D. Wis. 2009). ...........................................................23

*Ortlieb v. United HealthCare Choice Plans,*
387 F.3d 778 (8th Cir. 2004). ........................................................................22

*Pakovich v. Verizon LTD Plan,*
653 F.3d 488 (7th Cir. 2011). ........................................................................43

*Ross v. Indiana State Teacher's Association Insurance Trust,*
159 F.3d 1001 (7th Cir. 1998). ..................................................................17, 18

*Rula A.-S. v. Aurora Health Care,*
No. 20-cv-1816-JPS, 2021 WL 3116143 (E.D. Wis. July 22, 2021). ......................32, 33

*Semien v. Life Insurance Co. of North America,*
436 F.3d 805 (7th Cir. 2006). ......................................................................18

*Shyman v. Unum Life Insurance Co.,*
427 F.3d 452 (7th Cir. 2005). ......................................................................18

*Smith v. Golden Rule Insurance Co.,*
526 F. Supp. 3d 374 (S.D. Ind. 2021)........................................................32, 33

*Trustmark Insurance Co. v. Schuman,*
No. IP 99-1081-c-t/g, 2004 WL 1622094 (S.D. Ind. June 8, 2004). ..........................22

*Varity Corp. v. Howe,*
516 U.S. 489 (1996).............................................................................27, 29, 31

*Williams v. Aetna Life Insurance Co.,*
509 F.3d 317 (7th Cir. 2007). ....................................................................17, 18, 19

## Federal Rules, Regulations, and Statutes

29 U.S.C. § 1104 ...................................................................................27

29 U.S.C. § 1132 ..........................................................................*passim*

29 U.S.C. § 1144 ...................................................................................28

29 U.S.C. § 1185a. ...............................................................................31

78 Fed. Reg. 68240 (Nov. 13, 2013)...............................................................31

29 C.F.R. § 2590.712............................................................................32

Federal Civil Procedure Rule 56 .................................................................16

## State Regulations and Statutes

Wis. Stat. § 632.895............................................................................30, 40

Wis. Adm. Code § Ins. 3.36.......................................................................41

Defendant Group Health Cooperative of South Central Wisconsin ("GHC") respectfully moves for summary judgment on all claims alleged by Plaintiffs Angela Midthun-Hensen and Tony Hensen ("Plaintiffs") in their Amended Complaint, stating as follows:

## INTRODUCTION

Plaintiffs' Amended Complaint does not address the legal and factual flaws raised by GHC in its initial filing of this motion for summary judgment. The Amended Complaint made no substantive changes to Plaintiffs' Count I claim for benefits under ERISA, their Count II claim for breach of fiduciary duty under ERISA, or their claim under Wisconsin state law. Plaintiffs' only additions were allegations that attempt to plead a claim under the Paul Wellstone and Pete Dominici Mental Health Parity and Addiction Equity Act of 2008 (the "Federal Parity Act"), but the coverage documents do not support their arguments that comparable medical and surgical benefits were treated more preferentially than mental health benefits.

Therefore, in large part, GHC is refiling its prior summary judgment motion, with an additional section that addresses Plaintiffs' new Federal Parity Act allegations. GHC asks that the Court grant it summary judgment for the same reasons as before: that GHC reasonably interpreted the plan documents and the available medical research to determine that the treatments that Plaintiffs were requesting were experimental and investigational, and, therefore, not covered.

In determining that Plaintiffs' requested benefits were not covered, GHC relied upon nationally respected authorities and independent medical experts, all of which informed GHC that Plaintiffs' treatments were not recognized as evidence-based and were, therefore, experimental and investigational at the time they were sought in 2017-2019. Plaintiffs may believe that GHC's determination was wrong—that, in their opinion, research did support the efficacy of these treatments—but that is not the standard to be

applied. The question is whether GHC abused its discretion in making the decision it did, and Plaintiffs cannot satisfy that high bar.

Plaintiffs' claim that GHC was required to approve coverage for the treatments under state or federal law also fails. The Plan's coverage exactly tracks Wisconsin law, and the relevant treatment limitations are no different than those imposed upon comparable medical and surgical benefits. There is no that law requires that a health plan cover all possible benefits, and there is certainly no law that mandates that a plan cover benefits that it deems to be experimental and investigational.

GHC moves for summary judgment on Plaintiffs' claims now because they are ripe to be decided based on established law, the administrative record for Plaintiffs' coverage denials, and the plan documents. These materials show that GHC did not abuse its discretion or breach its fiduciary duties in denying Plaintiffs' coverage requests. For these reasons, and as set forth in more detail below, GHC respectfully requests that the Court grant GHC summary judgment on each of Plaintiffs' four claims.

FACTUAL BACKGROUND[1]

## I.      The Parties & Their Relationship

GHC was formed over 45 years ago as Dane County's first health maintenance organization (HMO).[2] Its founders' goals continue to be emphasized by GHC today: to provide accessible, comprehensive, high-quality healthcare and outstanding service in an efficient and personalized manner.[3] As a result of these values, GHC has been ranked among the top HMOs in the nation for quality. GHC operates as a non-profit organization, and it is a cooperative, owned by its members.[4] Two GHC roles are relevant

---

[1] This this Factual Background section remains largely the same as that in GHC's initial summary judgment briefing. GHC repeats the background so that the Court has a full set of briefing and record in front of it while considering the present motion.

[2] https://ghcscw.com/about-us/history

[3] *Id.*

[4] *Id.*

2

in the present case. First, GHC issues health insurance plans to employers interested in sponsoring a health plan for their employees.[5] Second, GHC oversees the administration of the benefits provided under the issued health plans.[6]

Effective July 2016, GHC contracted with the Verona Area School District ("VASD") to issue a health plan for the benefit of VASD's employees and their dependents.[7] At all relevant times, Plaintiff Angela Midthun-Hensen has been an employee of VASD, and she has enrolled herself, her husband (Plaintiff Tony Hensen), and her daughter (K.H.) in a VASD-sponsored health plan issued and overseen by GHC (the "Plan").[8]

Plaintiffs allege in their Amended Complaint that GHC denied claims for treatments that Plaintiffs believe were either covered by the Plan or were not covered by the Plan but *should* have been.[9] GHC denies that the Plan covered the treatments at the time Plaintiffs sought them and denies that any law required the Plan to provide such coverage.[10]

## II.     The Plan Documents & GHC's Discretion to Make Coverage Decisions

Pursuant to its "Group Service Agreement" with VASD, each GHC member was issued a "Member Certificate" that explained "the terms, Benefits, limitations, and conditions of the group health plan."[11] The Member Certificates explain that they constitute the ERISA employee benefit plan documents and plan instruments, and they

---

[5] *See* Group Health Cooperate of South Central Wisconsin's Proposed Findings of Facts in Support of Its Motion for Summary Judgment on Plaintiffs' Amended Complaint ("FOF"), filed contemporaneously herewith, at ¶ 1.

[6] *Id.*

[7] *Id.* ¶ 3.

[8] *Id.* ¶ 4.

[9] Class Action Complaint and Jury Demand ("Am. Compl."), Dkt. 32, at ¶¶ 7-11, 21-24.

[10] Defendant Group Health Cooperative of South Central Wisconsin's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint, Dkt. 33, at ¶¶ 10-11, 24.

[11] FOF ¶ 5.

are the documents that describe the Plan's coverage—what the Plan covered and what it excluded.[12]

The Member Certificates delegated substantial discretion to GHC to determine plan members' eligibility for benefits and to construe the coverage terms set forth in the Member Certificates.[13]  Specifically, the Member Certificates provided that GHC was the "named fiduciary for purpose of determining Benefits and reviewing Grievances under this Certificate," and in that role, GHC possessed the power to "determine eligibility for Benefits and to construe the terms" of the Member Certificates.[14]  In performing this function, GHC's determinations were "final and binding for all parties unless arbitrary and capricious."[15]

## III.  <u>The Plan's Coverage for the At-Issue Benefits</u>

Several provisions in the Member Certificates are relevant to a determination as to whether the Plan provided coverage for the speech and occupational therapy treatments Plaintiffs sought.

First, all services that were not "Medically Necessary" were excluded by the Plan.[16]  The Plan's definition of "Medically Necessary" and "Medical Necessity" provided GHC with substantial discretion to determine what services were and were not "Medically Necessary," and it specifically stated that any service that had not been deemed appropriate under acceptable medical standards was not medically necessary (and, therefore, not covered by the Plan).[17]

---

[12] *Id.* ¶¶ 8-10.  Plaintiffs submitted pre-service requests for coverage and appeals for the at-issue treatments in 2017, 2018, and 2019.  Any difference between the three Member Certificates is addressed herein.

[13] *Id.* ¶¶ 11-13.

[14] *Id.* ¶¶ 11-12.

[15] *Id.* ¶ 12.

[16] *Id.* ¶ 14.

[17] *Id.* ¶ 15.

The Plan relatedly excluded all services that GHC deemed to be "Experimental, Investigational or Unproven,"[18] which included treatments that were not "a commonly accepted medical practice," "lack[ed] recognition and endorsement of nationally accepted medical panels," did "not have the positive endorsement of supporting medical literature," or for which "reliable evidence" did not show that there was a consensus of opinion among experts of the efficacy of the treatment.[19] The Member Certificates are clear that all coverage expressly provided in the Member Certificates is otherwise "subject to the Exclusions and Limitations" set forth, including the requirement that all services be Medically Necessary and not Experimental or Investigational.[20]

The Member Certificates provided some express coverage for the diagnosis and treatment of Autism Spectrum Disorder ("ASD").[21] Among other limitations, the Member Certificates were explicit that coverage was provided **only** for those ASD treatments that were "evidence based."[22] The Member Certificates distinguished between the Plan's coverage for "Intensive-Level Services" and "Non Intensive-Level Services."[23] Plaintiffs were not seeking coverage for "Intensive-Level Services."[24]

Finally, the Plan excluded all outpatient habilitation therapies, which were defined as "services that assist an individual in partially or fully acquiring or improving skills" that they did not previously possess, such as "therapy for a child who is not walking or talking at the expected age."[25] The Plan provided coverage for some outpatient *rehabilitation* therapies, but it excluded those outpatient rehabilitation therapies (and

---

[18] *Id.* ¶ 17.

[19] *Id.* ¶ 18. "Reliable evidence" was defined as "anything determined to be such by GHC-SCW, within the exercise of its discretion." *Id.*

[20] *Id.* ¶ 19.

[21] *Id.* ¶ 20.

[22] *Id.* ¶¶ 21-22.

[23] *Id.*

[24] *Id.* ¶ 51.

[25] *Id.* ¶¶ 23-24. GHC issued plans that provided coverage for habilitative therapies, but in the relevant 2017-2019 time period, VASD did not purchase that coverage for its members. (*Id.* ¶ 25).

specifically speech therapy and occupational therapy) used to treat "chronic brain injuries," such as developmental delays and cerebral palsy.[26]  Sensory integration ("SI"), the type of occupational therapy sought by Plaintiffs, was expressly excluded as a treatment for any condition.[27]

IV.  **Policy 121**

To aid GHC in evaluating whether treatments were evidenced based, not experimental/investigational, and accepted by the medical community (and, therefore, medically necessary), GHC prepared policy guidance documents for various conditions.[28]  Policy 121 provides guidance for the evidence-based treatments for ASD, and it sets forth which ASD treatments the medical community had determined (in GHC's review) to have sufficient evidence to support their efficacy as well as what treatments *lacked* such evidence.[29]  GHC also has policy documents setting forth its review of the research supporting treatments for various medical conditions, such as chiropractic treatments.[30]

Policy 121 did not add additional or different coverage terms to the Plan, and GHC did not deny coverage based upon any exclusions solely within Policy 121.[31]  Rather, Policy 121 helped provide guidance as to the application of the Plan's coverage—*i.e.*, what treatments were evidence based and which were not.[32]  GHC approved or denied claims based upon the Plan's coverage terms, but it looked to policies like Policy 121 for background on the status of research into medical treatments and the acceptance of those treatments by the medical community at large.[33]

---

[26] *Id.* ¶¶ 26-27.

[27] *Id.* ¶¶ 28-29.

[28] *Id.* ¶ 30.

[29] *Id.* ¶ 32.

[30] *Id.* ¶¶ 112-114.

[31] *Id.* ¶ 31.

[32] *Id.* ¶¶ 31-32.

[33] *Id.* ¶ 31.

GHC regularly reviewed the available medical literature to determine whether new evidence had been released that would provide the level of support GHC believed was necessary to transition treatments from experimental/investigational to evidence-based and medically necessary.[34]  In 2017-2019, when Plaintiffs submitted their pre-service requests for treatments and appeals, Policy 121 relied upon a 2015 report referred to as the "National Standards Project," which had been issued by the National Autism Center.[35]  The National Standards Project reviewed reliable peer-reviewed studies on ASD treatments and identified whether various treatments were or were not supported by sufficient evidentiary studies to be considered established.[36]

Based upon the studies reviewed by the National Autism Center, the National Standards Project concluded that speech therapy was an established treatment only for children 3-9 years old and not for children over that age.[37]  In the versions of Policy 121 in effect in 2017-2019, GHC adopted the National Standards Project's determination that speech therapy was an evidence-based treatment for children ages 3-9 only.[38]

With regard to the sensory integration ("SI") occupational therapy sought by Plaintiffs, the National Standards Project found little to no evidence in support of the treatment for persons of any age.[39]  As a result, in 2017-2019, GHC's Policy 121 provided that SI occupational therapy was not an evidence-based treatment for ASD.[40]

---

[34] *Id.* ¶ 34.

[35] *Id.* ¶ 35.  The non-profit National Autism Center and its National Standards project brought dozens of medical experts together to review treatments and establish a system to determine evidence-based standards and guidelines.  Additional background on this organization and the National Standards project is available at https://nationalautismcenter.org/national-standards-project/ and is contained within Ex. 8 to the Declaration of Carol Meyer, filed herewith.

[36] FOF at ¶ 36.

[37] *Id.* ¶ 37.

[38] *Id.* ¶ 38.

[39] *Id.* ¶¶ 39-40.

[40] *Id.* ¶ 41.

GHC continued to review emerging medical research into ASD treatments, and in 2020 the National Clearinghouse on Autism Evidence & Practice issued a report titled "Evidence-Based Practices for Children, Youth, and Young Adults with Autism," or "EBP Report," which, like the National Standards Project, reviewed available studies into the effectiveness of various ASD treatments (including new studies that had been issued since 2015) and identified which treatments were evidenced-based practices.[41] Based upon new studies, the EBP Report determined that SI occupational therapy and some speech therapy treatments now had sufficient support to be considered evidence-based treatments for children of all ages.[42]

As a result of the 2020 EBP Report's determinations that speech therapy for children over age 10 and SI occupational therapy were evidence-based treatments for ASD, GHC revised Policy 121 to reflect that those treatments had moved out of the category of experimental and investigational and had become evidence-based.[43] This revision was effective October 20, 2020—almost a full year before Plaintiffs filed their Complaint—and requests for speech therapy for children over age 10 and for SI occupational therapy as treatments for ASD were approved at that time (assuming that all other coverage requirements were satisfied).[44]

## V.    K.H.'s Requests for and Receipt of Benefits

At the time GHC issued the Plan to VASD in 2016, K.H. was 8 years old. From July 2016 until March 2018 (before K.H. turned 10), GHC authorized coverage for certain ASD treatments for K.H., including speech therapy treatments.[45] After K.H. turned 10 on March 9, 2018, GHC denied Plaintiffs' subsequent requests for coverage for speech

---

[41] *Id.* ¶ 42.

[42] *Id.* ¶¶ 43-44.

[43] *Id.* ¶ 45.

[44] *Id.* ¶¶ 45-46.

[45] *Id.* ¶ 47.

therapy treatments because such services were not considered evidence-based at the time they were made.[46]

From 2017 through 2019, Plaintiffs submitted seven requests for either speech or occupational therapy coverage for K.H., and they appealed GHC's denials of those requests.[47] The full administrative record is attached as exhibits, and each appeal is summarized below.

After the denial of their appeals in 2019, Plaintiffs made no additional requests for speech or occupational therapy coverage until August 2021, approximately a month before they filed their Complaint.[48] Because of the additional research providing evidence supporting the effectiveness of speech and SI occupational therapy treatments, and because of GHC's amendment of Policy 121 in October 2020 following its review of that research, GHC *approved* Plaintiffs' requests.[49] K.H. has been receiving speech and occupational therapy treatments since early September 2021, with those treatments covered by the Plan.[50]

### A. 2017 Appeal of Denials of Requests for Occupational Therapy

On April 24, 2017, Plaintiffs submitted a pre-service request for coverage of occupational therapy for K.H. to treat her ASD. GHC spoke to the provider, Communication Innovations, Inc. ("Communication Innovations"), a pediatric therapy center offering speech, occupational, physical, and other therapies to children.[51] GHC denied the claim, citing to Policy 121 and stating that "occupational therapy is not an evidence-based treatment for autism and is not covered."[52]

---

[46] *Id.* ¶ 79.

[47] *Id.* ¶¶ 53-107.

[48] *Id.* ¶ 108.

[49] *Id.* ¶¶ 48-49.

[50] *Id.* ¶ 50.

[51] *Id.* ¶¶ 54-55. *See also* https://www.citherapies.com/ (providing background on Communication Innovations, Inc.).

[52] FOF ¶ 57.

A month later, following the denial of coverage for occupational therapy as a treatment for ASD, Plaintiffs asked Communication Innovations to submit a new pre-service request but change the diagnosis to indicate that the reason for occupational therapy was because K.H. "has low muscle tone and delays in both fine and gross motor skills."[53] GHC denied Plaintiffs' request under the Plan's exclusion for outpatient rehabilitation therapy when used to treat developmental delays and chronic brain conditions.[54]

On September 20, 2017, GHC received Plaintiffs' appeal of both of GHC's denials of occupational therapy coverage.[55] Plaintiffs submitted a "letter of medical necessity" and a treatment plan from Communication Innovations.[56] They also submitted studies that they claimed provided evidence in support of the treatment.[57]

GHC's Member Appeals Committee met on October 10, 2017 to review Plaintiffs' appeal.[58] After review of the appeal, the Appeals Committee upheld the denial of benefits, stating that occupational therapy was not an "evidence-based treatment for the core deficits of autism spectrum disorders as per the National Standards Project, National Autism Center (2015)."[59]

At the same time that Plaintiffs were appealing to GHC, Plaintiffs also submitted a complaint to Wisconsin's Office of the Commissioner of Insurance (OCI).[60] Plaintiffs' OCI complaint stated that they were trying to obtain coverage for occupational therapy from GHC, that GHC was "stating that it is not an evidence based therapy and therefore

---

[53] *Id.* ¶ 58.

[54] *Id.* ¶¶ 60-61.

[55] *Id.* ¶ 64.

[56] *Id.* ¶ 65.

[57] *Id.*

[58] *Id.* ¶ 67.

[59] *Id.* ¶ 69.

[60] *Id.* ¶ 72.

is not covered by my plan," and that Plaintiffs wanted the OCI to review the Plan's coverage to determine "whether or not it complies with the state autism mandate."[61]

GHC responded to Plaintiffs' OCI complaint by explaining that Wisconsin's autism mandate, Wis. Stat. § 632.895(12m), requires coverage of "Intensive-level services" and "Nonintensive-level services," which the statute defined, in part, as "evidence-based therapy."[62] GHC further stated that it had denied K.H.'s occupational therapy services because "occupational therapy is not an evidence-based therapy for the treatment of autism," citing to the National Standards Project as support.[63] The OCI closed Plaintiffs' complaint with no findings.[64]

### B. 2018 Appeals of Denials of Requests for Speech Therapy

After K.H. turned 10, GHC notified Plaintiffs that she was no longer eligible for coverage for speech therapy treatments, as the available evidence did not sufficiently support the effectiveness of such treatment for children age 10 and above.[65] GHC sent Plaintiffs two letters denying Plaintiffs' requests for future coverage.[66] The first letter stated that because speech therapy was not an evidence-based treatment for children over age 10 (per the National Standards Project), it was not covered under the Plan's ASD coverage.[67] The second letter explained that, absent coverage under the Plan's ASD provisions as an evidence-based therapy, speech therapy was not otherwise covered but rather was excluded as an outpatient habilitative treatment or as an outpatient rehabilitative treatment for a development delay.[68]

---

[61] *Id.* ¶ 73.

[62] *Id.* ¶ 74.

[63] *Id.* ¶ 75.

[64] *Id.* ¶ 76.

[65] *Id.* ¶ 79.

[66] *Id.*

[67] *Id.* ¶ 80.

[68] *Id.* ¶ 81.

In April 2018, Plaintiffs appealed the coverage denials, stating that they had spoken to GHC representatives and had come away with the belief that coverage was provided.[69] GHC's Appeals Committee met on April 24, 2018 and upheld the denial.[70]

In June 2018, Plaintiffs submitted a new pre-service request for speech therapy.[71] GHC denied this request, and the denial letter sets forth three grounds for denial: (1) the Plan's limitation of ASD benefits to those that were evidence-based; (2) the Plan's exclusions of coverage for outpatient habilitation services and for outpatient rehabilitation services for treating developmental delays; and (3) the Plan's exclusion of experimental and investigational treatments.[72]

Plaintiffs filed an additional appeal on approximately June 21, 2018.[73]  In this second 2018 appeal, Plaintiffs stated that there was evidence *in K.H.'s specific case* that she was benefiting from speech therapy services, and they attached letters from two of K.H.'s providers that discussed her progress after receiving speech therapy.[74]

Before deciding Plaintiffs' appeal, GHC sought an independent, voluntary, non-binding external review from the Medical Review Institute of America, LLC ("MRIoA").[75] MRIoA utilizes over 600 physician reviewers to provide independent clinical reviews and virtual second opinions to health plans and plan administrators.[76]  GHC submitted the following question to MRIoA for review:

> Is speech therapy an evidence based approach for treating the core deficits of autism in children 10 years of age and older?[77]

---

[69] *Id.* ¶¶ 82-83.

[70] *Id.* ¶ 84.

[71] *Id.* ¶ 85.

[72] *Id.* ¶¶ 86-87.

[73] *Id.* ¶ 88.

[74] *Id.*

[75] *Id.* ¶ 89.

[76] *See* https://www.mrioa.com/about-us/ (providing background on MRIoA).

[77] FOF ¶ 89.

GHC's question was reviewed by Dr. William Holmes, a physician who was board certified by the American Board of Psychiatry and Neurology in General Psychiatry and Child & Adolescent Psychiatry.[78] Dr. Holmes had experience with autism and its therapies, and he had authored articles and publications in psychiatry.[79] His conclusion and response to GHC's question was:

> No. Speech therapy is not an evidence based approach for treating the core deficits of autism in children 10 years of age and older.
>
> The use of speech therapy in older children and adolescents does not have the same support in the medical literature compared to younger children, for which speech therapy can be of potential benefit. As a result, the use of speech therapy in this age group is not automatically considered to be part of the standard of care; therefore, it would not be considered to be an evidence based approach in the treatment of ASD.[80]

GHC's Appeals Committee met on July 10, 2018 to decide Plaintiffs' appeal.[81] After consideration of all available information, including the independent review provided by Dr. Holmes, the committee upheld the denial.[82]

### C. 2019 Appeals of Denials of Requests for Speech Therapy & Occupational Therapy

In December 2018 and January 2019, Plaintiffs submitted new pre-service requests for speech and occupational therapy for K.H.[83] By letter dated January 4, 2019, GHC denied the request for occupational therapy under the Plan's exclusion for experimental and investigational treatment, referring to Policy 121 as the basis for the conclusion that the treatment was experimental and investigational.[84]

---

[78] *Id.* ¶ 90.

[79] *Id.*

[80] *Id.* ¶ 91.

[81] *Id.* ¶ 92.

[82] *Id.* ¶ 93.

[83] *Id.* ¶¶ 95, 97.

[84] *Id.* ¶¶ 95-96.

GHC denied Plaintiffs' request for speech therapy coverage by letter dated January 29, 2019.[85] The letter stated that coverage was denied because speech therapy was not an evidence-based treatment for ASD for children over 10 and was, therefore, not covered by the Plan's ASD coverage.[86] On approximately April 10, 2019, GHC received Plaintiffs' appeal of GHC's denial of the requests for both occupational and speech therapies.[87]

As part of their appeal, Plaintiffs submitted evaluations of K.H. by her providers, along with studies that they argued provided evidence of the effectiveness of speech and occupational therapies for children with ASD.[88] GHC reviewed the materials submitted but ultimately determined, in its discretion, that the studies submitted did not provide sufficient evidence.[89]

As it did in response to Plaintiffs' appeal of the 2018 denial of their pre-service request for speech therapy coverage, GHC sought an independent, non-binding external review from MRIoA of the issues raised.[90] GHC wanted an independent medical review both as to (1) whether new research had been presented that moved the therapies from being investigational into being established, and (2) regardless of whether there was sufficient evidence of the effectiveness of the therapies *generally*, whether there was sufficient evidence of the effectiveness of the therapies for K.H. *specifically*.[91] GHC provided MRIoA with the assessments and notes from Plaintiffs.[92]

The MRIoA review was performed by Dr. Paul Hartman, who was board certified by the American Board of Psychiatry and Neurology in Child and Adolescent Psychiatry

---

[85] *Id.* ¶ 97.

[86] *Id.* ¶ 98.

[87] *Id.* ¶ 99.

[88] *Id.* ¶ 100.

[89] *Id.* ¶ 107.

[90] *Id.* ¶ 101.

[91] *Id.* ¶ 104.

[92] *Id.* ¶ 102.

and who treated pervasive developmental disorders in patients with ASD.[93] Dr. Hartman responded that:

- The current research, including data that had been released since GHC's last MRIoA review, did "not demonstrate medical evidence in support of providing speech therapy as an effective treatment option in an autistic child over the age of 10."

- Occupational therapy was "not an evidence based treatment for the core deficits of autism in any child," and the research on occupational therapy ASD treatments was "sparse and considered methodologically flawed."

- Occupational therapy and speech therapy were not medically evidence backed treatments for K.H. specifically.[94]

GHC's Appeals Committee met on April 23, 2019 to decide Plaintiffs' appeal.[95] Plaintiffs Angela Midthun-Hensen and Tony Hensen attended the meeting.[96] After consideration of the information presented by Plaintiffs during the appeals meeting, as well as the assessment of MRIoA and all of the materials provided by Plaintiffs, the Appeals Committee decided to uphold the denial decisions, stating that neither occupational therapy nor speech therapy for children over age 10 were evidence-based treatments for ASD and, therefore, were not covered by the Plan.[97]

Plaintiffs submitted no further follow up after the appeal until two years later, in August 2021, when Plaintiffs submitted the pre-service requests for occupational and speech therapy (discussed above) that were approved following GHC's revision of Policy 121 (in October 2020) in accordance with its review of newly released studies supporting the treatments' efficacy.[98]

---

[93] *Id.* ¶ 103.

[94] *Id.* ¶¶ 104-105.

[95] *Id.* ¶ 106.

[96] *Id.*

[97] *Id.* ¶ 107.

[98] *Id.* ¶¶ 48-50, 108.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper only if the movant can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant is entitled to judgment as a matter of law where the non-movant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

"As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "[A] party can file a motion for summary judgment at any time, indeed, even before discovery has begun." *Brill v. Lante Corp.*, 119 F.3d 1266, 1275 (7th Cir. 1997).

## ARGUMENT

### I.     GHC Is Entitled to Summary Judgment on Count I Because It Did Not Abuse Its Discretion in Denying Plaintiffs' Requests for Benefits.[99]

Plaintiffs allege that Count I of their Amended Complaint is brought under 29 U.S.C. § 1132(a)(1)(B). As the Court noted in its Opinion and Order ruling on Plaintiffs' request for discovery under Fed. R. Civ. P. 56(d) (the "Rule 56(d) Order," Dkt. 31), this provision of ERISA allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (cited in Dkt. 31 at 10). Although Plaintiffs *continue* to title Count

---

[99] Plaintiffs' Amended Complaint did not include any substantive new allegations under Count I, so GHC's argument for judgment on Count I remains largely the same as its arguments in its prior summary judgment motion.

I as a claim for "Improper Denial of Coverage and Benefits – Breach of Fiduciary Duty," a claim brought under Section 1132(a)(1)(B) is not a claim for breach of a fiduciary duty.

As set forth below, the Court's role in reviewing Plaintiffs' Section 1132(a)(1)(B) claim is limited to determining whether GHC acted reasonably in interpreting the Plan's coverage terms and in applying those terms to deny Plaintiffs' pre-service requests for speech and occupational therapy for K.H. The Court may ultimately disagree with the conclusion that GHC reached, or it may find that some resources exist that contradict GHC's decision, but as long as GHC's actions are ***among the reasonable options***, then a claim brought under Section 1132(a)(1)(B) fails. Because GHC based its decisions on reasonable interpretations of the Plan, and because it relied upon independent and respected third-party resources in applying the Plan terms, the Court should find that GHC did not abuse its discretion and should grant GHC summary judgment on Count I.

**A.    The Court's review is limited to determining whether GHC's coverage decision was one reasonable interpretation of the plan documents.**

The proper standard of review for analyzing a 29 U.S.C. § 1132(a)(1)(B) claim has been long decided. As the Court stated in its Rule 56(d) Order, "where a plan administrator has . . . discretionary authority, the court reviews the [benefits] decision under the arbitrary and capricious standard." [100] (Dkt. 31 at 10) (citing *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cri. 2007) and *Hackett v. Xerox Corp. Long-Term Disab. Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003)).

GHC plainly possessed discretion to construe the Plan's terms and determine eligibility for benefits, a fact that Plaintiffs did not contest in their Rule 56(d) briefing. The Member Certificate, which is the plan instrument and plan document, expressly states

---

[100] Seventh Circuit courts alternatively refer to this standard as the abuse of discretion standard or as the arbitrary and capricious standard. In ERISA cases, the standards are viewed synonymously and as substantially equivalent. *See Ross v. Ind. St. Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1009 (7th Cir. 1998); *Crista v. Wis. Physicians Serv. Ins. Corp.*, No. 18-cv-365-wmc, 2021 WL 3511092, at *10 n.9 (W.D. Wis. Aug. 10, 2021).

that GHC "has the discretionary authority to determine eligibility for Benefits and to construe the terms of [the] Certificate."[101]  The Member Certificate reiterated elsewhere that VASD had "delegated to GHC-SCW the discretion to determine whether Members are entitled to Benefits under the Certificate."[102]

These delegations of discretion to GHC are sufficient to trigger the abuse of discretion standard in reviewing Plaintiffs' claim under Section 1132(a)(1)(B).  In *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005), the insurance certificate included language very similar to that contained in GHC's Member Certificates, providing that, "when making a benefit determination under the Policy, [the claims administrator] has discretionary authority to determine your eligibility for benefits and to interpret the terms and conditions of the Policy."  The Seventh Circuit reviewed this delegating language and held that "[n]o more is needed to give the plan administrator discretion and limit the scope of judicial review."  *Id.*

In applying the abuse of discretion standard in reviewing a challenge to a claims administrator's denial of coverage, the Court "must determine **not** whether [the administrator's] decision is correct or whether [the Court] would have answered the question another way, but instead **whether the [administrator's] interpretation of the plan was unreasonable**."  *Ross*, 159 F.3d at 1009 (emphasis added).  Because this standard permits an administrator's decision to be overturned only if it is "downright unreasonable,"[103] the abuse of discretion standard is considered to be "the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan."  *Jacowski v. Kraft Heinz Foods Co.*, No. 15-cv-657-bbc, 2016 WL 6693588, at *13 (W.D. Wis. Nov. 14, 2016) (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006)).  Although the Seventh Circuit has

---

[101] FOF ¶¶ 8, 12.

[102] *Id.* ¶ 11.

[103] *Williams*, 509 F.3d at 321.

emphasized that courts should not treat this standard as a "rubber stamp," it has stated that administrators' coverage decisions should be upheld as long as:

(1) It is **possible to offer a reasoned explanation**, based on the evidence, for a particular outcome;

(2) The decision is **based on a reasonable explanation** of relevant plan documents, *or*

(3) The administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.

*Williams*, 509 F.3d at 321-22 (emphases added). *See also Exbom v. Cent. St., Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990) (stating that the abuse of discretion standard requires that an administrator's decision will not be overturned in a Section 1132(a)(1)(B) case "if it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.").

Finally, because the Court's role is to determine whether the administrator's rationale for its coverage decision was unreasonable, in reviewing a claim brought under Section 1132(a)(1)(B), the "scope of the court's review is limited to the record the plan administrator had before it at the time that the benefits determination was made." *Jacowski*, 2016 WL 6693588, at *13 (citing *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994)). In denying Plaintiffs' request for discovery into this claim, the Court held that this general rule limiting review to the administrative record applies. (Dkt. 31 at 16). Therefore, the only documents the Court should consider in determining GHC's entitlement to summary judgment on Count I is the administrative record for each of Plaintiffs' appeals and the documents that GHC relied on in deciding those appeals.

**B.    GHC's interpretation of the Plan's coverage terms was reasonable.**

A claim brought under 29 U.S.C. § 1132(a)(1)(B) is limited to determining whether a plaintiff can "recover benefits due to him <u>under the terms of his plan</u>," "enforce his rights <u>under the terms of the plan</u>," or "clarify his rights to future benefits <u>under the terms</u>

of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphases added). Under the plain language of the ERISA civil enforcement provision, a Section 1132(a)(1)(B) claim is limited to reviewing what benefits the plan <u>actually</u> covered. The claim does not extend to address a plaintiff's argument about what benefits a plan <u>should</u> cover. *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 327 (7th Cir. 1994). Therefore, the Court's review of Plaintiffs' Count I must focus on what benefits the Plan <u>actually</u> covered, and consideration as to whether the Plan <u>should</u> have provided coverage pursuant to the Federal Parity Act or Wisconsin law is unnecessary and irrelevant.

Three separate Plan coverage or exclusion provisions support GHC's denial of Plaintiffs' pre-service requests and appeals for speech and occupational therapy. GHC's interpretation of each of these provisions was reasonable, and the only issue before the Court is whether GHC's interpretation was one of possibly many reasonable interpretations. *See Gallo v. Amoco Corp.*, 102 F.3d 918, 921-22 (7th Cir. 1996) (finding that claims administrator did not abuse its discretion because, regardless of whether its interpretation of the plan was right or wrong, its interpretation was not unreasonable, and the reasons in favor of its interpretation "were at least as strong as the reasons against").

### 1. Not Evidence-Based

First, GHC denied coverage for speech and occupational therapies because they did not fall within the Plan's coverage for the treatment of ASD.[104] The Member Certificate provided that the plan only covered ASD treatments if they were "evidence-based."[105] If treatments were not "evidence-based," then GHC interpreted the Member Certificate to mean that they were not covered by the Plan, even if the treatments

---

[104] FOF ¶¶ 69, 80, 87, 96, 98, 107.

[105] *Id.* ¶¶ 21-22.

otherwise met the coverage requirements.[106]  This is a reasonable interpretation of the coverage terms.

GHC's determination that speech and occupational therapies were not evidence-based treatments for K.H.'s ASD was also reasonable.  At the time that Plaintiffs submitted their pre-service requests and appeals in 2017-2019, GHC relied upon the National Autism Center's National Standards Project study and report.[107]  That report reviewed hundreds of studies into ASD treatments, excluded studies that it deemed unreliable, and identified which treatments had sufficient evidentiary support within the reliable studies to be considered "evidenced-based."[108]  Therefore, the resource that GHC primarily relied upon to determine whether or not an ASD treatment was "evidence based" was a conglomeration of the available research that a reputable, independent third-party organization (one that specializes in ASD) had assembled, reviewed, and summarized.  GHC did not simply hand pick random studies that supported a position.

Based upon its review of the available reliable research, the National Standards Project found that, although multiple studies existed that showed the merits of the treatment for children under the age of ten, there was not sufficient evidence that supported speech therapy as an established treatment for children ages ten and over.[109]  The National Standards Project also found little to no evidence that supported the effectiveness of SI occupational therapy for children of *any* age.[110]  As a result, the National Standards Project determined that speech therapy for children over ten and SI

---

[106] As discussed in more detail in Section III(A), below, GHC did not deny Plaintiffs' coverage requests because of an age-restricted coverage provision.  GHC denied the coverage requests because sufficient evidence did not exist that supported the efficacy of her treatments for children over the age of ten.  GHC did not arbitrarily set an age-based coverage exclusion.  Rather, the scientific research divided its studies based upon children's ages.  GHC highlights this because Plaintiffs' Amended Complaint seems to struggle with this distinction.

[107] *Id.* ¶ 35.

[108] *Id.* ¶ 36.

[109] *Id.* ¶ 37.

[110] *Id.* ¶ 40.

occupational therapy were not evidence-based practices that were supported by the scientific studies conducted at the time.[111]

It would have been reasonable for GHC to rely solely upon the National Standards Report. However, recognizing that knowledge of effective medical practices is constantly changing, GHC took the additional step of seeking second opinions from the independent MRIoA, specifically asking on two separate occasions whether new studies about speech and occupational therapy treatments had been released since the issuance of the National Standards Project in 2015, such that there was sufficient evidence in support of those treatments at the time of Plaintiffs' appeals in 2018 and 2019.[112] Both of GHC's MRIoA reviews were conducted by board-certified physicians who specialized in the treatment of children with ASD, and both physicians responded that the treatments Plaintiffs were seeking were not evidence-based practices.[113]

GHC's decision to seek independent expert evidence provides further support of the reasonableness of its coverage determinations. *See Jacowski*, No. 15-cv-657-bbc, 2016 WL 6693588, at *14 ("Aetna's decision to seek independent expert advice is reasonable and evidence of a thorough investigation.") (internal quotations omitted). Several courts have found that an administrator's decision was reasonable when it relied upon decisions of independent outside experts. *See, e.g., Crista*, No. 18-cv-365-wmc, 2021 WL 3511092, at *11 (stating that the administrator's decision "must be upheld" due to its reliance upon reviews conducted by two independent specialists from MRIoA); *Trustmark Ins. Co. v. Schuman*, No. IP 99-1081-c-t/g, 2004 WL 1622094, at *14 (S.D. Ind. June 8, 2004) (finding that administrator acted reasonably when decision was based upon its review of the plan language and its consultation with independent experts); *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 783 (8th Cir. 2004) (finding no abuse of discretion when

---

[111] *Id.* ¶¶ 37, 40.

[112] *Id.* ¶¶ 89, 101, 104.

[113] *Id.* ¶¶ 90-91, 103-105.

administrator determined that treatment was experimental based upon opinion of two independent physicians that treatment was unproven).

In support of some of their appeals, Plaintiffs submitted scientific studies that they claimed provided evidence in support of the treatments.[114] GHC reviewed the studies but ultimately determined to rely upon the National Standards Project (and its analysis of hundreds of studies) and the MRIoA experts as opposed to the single studies submitted by Plaintiffs.[115]

However, even if the studies that Plaintiffs submitted did support their contention that the treatments were evidence based and not experimental/investigational, it would not mean that GHC abused its discretion in relying upon its own expert resources instead of Plaintiffs'. When reviewing a claims administrator's decision to utilize its experts' determination despite contrary evidence submitted by the member, courts will not "reweigh the evidence" but merely look to determine whether the administrator's decision was reasonable. *Exbom*, 900 F.2d at 1144.

GHC relied upon the independent determinations and analysis of the National Autism Center in the National Standards Project as well as the expert decisions of two MRIoA specialists who stated that the National Autism Center's analysis remained valid. Even if Plaintiffs had presented sources that contradicted GHC's, the Court is not to be "the arbiter of which scientifically-based guidelines the Plan must accept. That judgment is entrusted to the Plan Administrator, not the Court." *Neal v. Christopher & Banks Comprehensive Major Med. Plan*, 651 F. Supp. 2d 890, 909 (E.D. Wis. 2009).

GHC's determinations that speech and occupational therapies were not evidence-based treatments were based upon a reputable independent resource guide and the opinions of two independent specialists. It was reasonable for GHC to rely upon these sources, even if there was some support to the contrary. Because GHC had reasonably

---

[114] *Id.* ¶¶ 65, 100.
[115] *Id.* ¶ 93, 107.

determined that the Plan only covered evidence-based treatments for ASD, GHC did not abuse its discretion in denying Plaintiffs' pre-service claims for treatments that GHC determined were not evidence-based.

### 2. *Experimental and Investigational*

Second, GHC denied Plaintiffs' claims as falling under the Plan's exclusion for experimental, investigational, or unproven treatments.[116]   The Member Certificates unambiguously listed "Experimental, Investigational or Unproven" treatments among the Plan exclusions.[117]  Moreover, the Member Certificates made it clear that all coverage expressly provided by the Plan was subject to this exclusion.[118]   Therefore, it was reasonable for GHC to interpret the Member Certificate as excluding treatments that GHC deemed to be experimental, investigational, or unproven, even if the Member Certificates would have otherwise covered the treatments.  *See Morton v. Smith*, 91 F.3d 867, 872 (7th Cir. 1996) ("We cannot find an abuse if the [administrator] employed a definition that a reasonable person would use.").

GHC's determination that speech and occupational therapy were experimental, investigational, or unproven treatments for K.H. overlapped with its determination that the therapies were not evidence-based.   The Plan's definition of an "Experimental, Investigational or Unproven" treatment included one:

- That "lacks recognition and endorsement of nationally accepted medical panels";

- That "does not have the positive endorsement of supporting medical literature published in an established, peer reviewed scientific journal"; or

- For which "reliable evidence shows that the consensus of opinion among experts regarding the treatment . . . is that further studies or clinical treatments are

---

[116] *Id.* ¶¶ 87, 96, 107.

[117] *Id.* ¶ 17.

[118] *Id.* ¶ 19.

necessary to determine its . . . efficacy or efficacy as compared with standard means of treatment or diagnosis."[119]

The Plan provided that "reliable evidence" included "anything determined to be such by GHC-SCW, within the exercise of its discretion, and may include published reports and articles in the medical and scientific literature generally considered to be authoritative by the national medical professional community . . . ."[120]

GHC determined that the speech and occupational therapy that Plaintiffs sought for K.H. was experimental and investigational for the same reasons that it determined that the treatments were not evidence-based: the National Standards Project report determined that such treatments were not supported by medical community or medical literature, and that the consensus of opinion was that further studies were necessary to determine the treatments' efficacy.[121]   GHC's reliance upon the National Standards Project was reasonable, even if there were some studies that supported the use of the treatments.  *See Jacowski*, No. 15-cv-657-bbc, 2016 WL 6693588, at *15 ("The deferential standard of review requires that we accept the administrator's choice between competing medical opinions so long as it is rationally supported by record evidence.") (citations omitted); *Crista*, No. 18-cv-365-wmc, 2021 WL 3511092, at *13 (citing cases in support of principle that when there is a "contest of competing medical opinions, a court cannot second-guess the plan administrator's choice between opinions so long as that choice is rationally supported").

Because GHC reasonably interpreted the Plan to exclude experimental and investigational treatments, and because it reasonably relied upon trustworthy sources in determining that the treatments were experimental and investigational, GHC did not abuse its discretion in denying Plaintiffs' pre-service requests.

---

[119] *Id.* ¶ 18.

[120] *Id.*

[121] *Id.* ¶¶ 37-41, 87, 96, 107.

### 3. Exclusions for Habilitation Therapies and for Rehabilitation Therapies for Development Delays

Third, GHC denied Plaintiffs' pre-service requests and appeals based upon its interpretation of the Plan's non-coverage and exclusions of habilitation therapies and of rehabilitation therapies when used as a treatment for development delays and chronic brain conditions.[122] Because GHC had determined that the treatments did not fall under the Plan's ASD coverage and were experimental and investigation as ASD treatments, it looked to determine whether the services were otherwise covered under any other provision, including as a treatment for K.H.'s "delays in both fine and gross motor skills." However, GHC ultimately determined that the Plan neither covered habilitative therapies designed to help children acquire skills nor rehabilitative therapies for the treatment of developmental delays. [123]

GHC's interpretation of the Plan to exclude habilitative and/or rehabilitative speech and occupational therapies to treat chronic childhood conditions was reasonable. The Plan excluded (or did not cover) all outpatient habilitative therapies, which were defined as services that assisted persons in acquiring skills they never had, including "therapy for a child who is not walking or talking at the expected age."[124] The Plan further excluded outpatient rehabilitative "speech therapy" and "occupational therapy" when used as treatments for "developmental delay."[125] Plaintiffs plainly sought the treatment to help K.H. acquire skills that she had not obtained at the expected age and in order to address K.H.'s developmental delays in motor skills.[126] Moreover, the Plan expressly stated, "Sensory integration therapy is not covered."[127] GHC reasonably interpreted the Plan to exclude the therapies when sought for this purpose.

---

[122] *Id.* ¶¶ 61, 81, 84, 87, 93.

[123] *Id.* ¶¶ 58, 61, 81, 84, 87, 93.

[124] *Id.* ¶¶ 23-24.

[125] *Id.* ¶ 27.

[126] *Id.* ¶ 58.

[127] *Id.* ¶¶ 28-29.

In all, GHC did not act arbitrarily or capriciously in determining that the Plan did not cover speech or occupational therapy as treatments for K.H.'s ASD or her developmental delays. The clear language of the Member Certificates supports GHC's interpretations of the Plan's exclusions, and its determinations that the treatments fell within those exclusions were supported by independent and reliable research and board-certified physicians. Because GHC did not abuse its discretion in determining that the Plan did not cover speech and occupational therapy for K.H., GHC is entitled to summary judgment on Count I, Plaintiffs' claim under 29 U.S.C. §. 1132(a)(1)(b).

## II.  GHC Is Entitled to Summary Judgment on Count II Because It Did Not Breach Any Fiduciary Duties by Denying Plaintiffs' Requests for Benefits.[128]

Plaintiffs brought Count II under 29 U.S.C. § 1132(a)(3).[129]  Section 1132(a)(3) allows an ERISA plan beneficiary to bring a civil action:

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  The Supreme Court has referred to this as a "catchall" provision that provides appropriate equitable relief for injuries caused by statutory violations of ERISA not remedied by Section 1132(a)(1).  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Because ERISA requires a plan fiduciary to "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), a plaintiff may assert a claim under Section 1132(a)(3) in order to enforce ERISA's statutory fiduciary requirements.

---

[128] Plaintiffs' Amended Complaint did not include any new substantive allegations under Count II, so GHC's arguments for judgment on this count remain largely the same as those in its prior summary judgment motion, with the exception of addressing Plaintiffs' Parity Act and Wisconsin law arguments in separate sections.

[129] Am. Compl. at ¶ 83.

Despite being given the opportunity to amend, the only fiduciary duty that Plaintiffs allege that GHC breached is its denial of Plaintiffs' requests for coverage for K.H.'s treatments.[130] GHC denied the requests made in 2017-2019, Plaintiffs believe they should have been approved, and Plaintiffs allege that GHC's denial was in breach of its fiduciary duties. Plaintiffs do not contend that GHC breached its fiduciary duties in any other way.

Within its Section 1132(a)(3) claim in Count II, the Amended Complaint includes paragraphs discussing state-law actions for bad faith denial of insurance coverage and breach of the duty of good faith and fair dealing.[131] These paragraphs do not appear to allege any fiduciary breach other than the decision to deny Plaintiffs' requests for coverage. To the extent Plaintiffs are attempting to plead state law causes of action, they are preempted by ERISA. 29 U.S.C. § 1144(a).

As in their original Complaint, Plaintiffs' Amended Complaint alleges three separate theories as to why GHC should have approved the pre-service coverage requests, all of which fail.

## A. GHC could not approve requests for services that were not covered by the Plan.

First, Plaintiffs contend that GHC breached its fiduciary duties simply because it denied coverage for treatments that Plaintiffs believed would have helped K.H., regardless of whether the Plan provided coverage.[132] However, GHC owed a fiduciary duty to the Plan and *all* its beneficiaries, so if GHC reasonably believed that the treatments were not covered, its fiduciary duties required it to deny the claims, even if there was a possibility that K.H. would have benefited. *See Crista*, No. 18-cv-365-wmc, 2021 WL

---

[130] *Id.* at ¶¶ 84-92.

[131] *Id.* at ¶¶ 88-92.

[132] For example, *see id.* at ¶ 88, in which Plaintiffs allege that "GHC's denial of coverage was due to its adherence to financial considerations of profit, rather than to the legitimate medical needs of its subscribers," and ¶ 91, in which Plaintiffs contend that the duty of good faith and fair dealing entitles children with ASD to coverage for all treatments, presumably regardless of what the Plan documents say.

3511092, at *19 (citing *Varity Corp.*, 516 U.S. at 514) (stating that once the plan administrator determined that the treatment was not covered, its "fiduciary duties arguably *required* it to deny plaintiffs' coverage given its obligations to preserve the Plan's assets") (emphasis original).

GHC's fiduciary duties to K.H. and the Plan as a whole required it to approve claims that it reasonably believed were covered by the Plan and to deny claims that it reasonably believed were not covered. As a matter of law, GHC cannot be found to have breached its fiduciary duties as long as it was reasonably interpreting the Plan's coverage terms.

**B. GHC did not breach any fiduciary duties in determining that the Plan did not cover the requested treatments.**

Second, Plaintiffs allege that GHC should have approved their pre-service coverage requests because the treatments <u>were</u> covered by the Plan, arguing that the treatments were not experimental and were evidence-based.[133] This is identical to Plaintiffs' Count I argument that GHC improperly denied claims for covered benefits, and the preceding section addresses this argument and describes why GHC's coverage decisions were reasonable and non-arbitrary. GHC relied upon reputable third-party resources and independent medical reviewers in determining that the treatments were not evidence-based, and its reliance upon these sources is objectively reasonable as a matter of law. For the same reasons that GHC is entitled to summary judgment on Count I, it is entitled to summary judgment on Plaintiffs' claim that GHC breached its fiduciary duties by denying claims that Plaintiffs believe to have been covered. *See Crista*, No. 18-cv-365-wmc, 2021 WL 3511092, at *19 (granting summary judgment on Section 1132(a)(3) claim alleging that the defendant breached fiduciary duties by failing to approve claims

---

[133] For example, *see id.* at ¶ 92, in which Plaintiffs allege that GHC breached its fiduciary duties by "wrongfully denying autism coverage for speech therapy based on age and OT as 'experimental,' and failing to undertake the necessary research to understand that these therapies are accepted as best practice among medical professionals."

for covered benefits after the court had previously granted the defendant summary judgment on the plaintiff's Section 1132(a)(1)(B) claim).

**C.  Federal and/or state law did not require GHC to approve claims that were not covered by the Plan.**

Third, Plaintiffs allege that GHC's denial of Plaintiffs' pre-service coverage requests was in violation of either (1) Wisconsin law mandating coverage for certain autism treatments (the "Wisconsin Autism Mandate"), Wis. Stat. § 632.895(12m), and/or (2) the Federal Parity Act.[134]  Plaintiffs contend that one or both of these laws required that the Plan cover speech and occupational therapy as treatments for ASD.  As set forth below in Sections III and IV of this memorandum, neither law requires such coverage.

GHC acted reasonably in determining that the Plan did not cover Plaintiffs' requested treatments, and no law mandated that GHC approve the treatments if they were not covered.  GHC should be awarded summary judgment on Count II because the law does not support a claim for breach of fiduciary duty under ERISA.

**III.  GHC Is Entitled to Summary Judgment on Count III, Because Plaintiffs Still Have Not Identified a Federal Parity Act Violation.**

Count III in Plaintiffs' Amended Complaint purports to be brought under the Federal Parity Act.  Several courts have held that there is no private right of action under the Federal Parity Act.  *See, e.g., Gallagher v. Empire HealthChoice Assur., Inc.*, 339 F. Supp. 3d 248, 255 (S.D.N.Y. 2018).  Rather, as noted by the Court in its Rule 56(d) Order, because the Federal Parity Act is incorporated into ERISA, claims alleging Federal Parity Act violations must be brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  *See* Dkt. 31 at 16 (citing *Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1219-20 (D. Utah 2019); *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n. 118 (D. Utah

---

[134] *Id.* at ¶¶ 12, 32.

2016); *Varity Corp.*, 516 U.S. at 512).[135]  Therefore, GHC is entitled to summary judgment on Plaintiffs' separate claim brought under the Federal Parity Act, and their Federal Parity Act allegations should be addressed as part of their Count II claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3).

The Federal Parity Act was "designed to end discrimination in the provision of coverage for mental health and substance use disorders as compared to medical and surgical conditions in employer-sponsored group health plans . . . ."  *Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010).  Relevant here, the Federal Parity Act requires that an insurance plan's "treatment limitations applicable to . . . mental health or substance use disorder benefits are not more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan . . . ."  29 U.S.C. § 1185a(a)(3)(A)(ii).  In other words, the Federal Parity Act requires just what its name implies: Parity.  The Act seeks to ensure that coverage for the treatment of mental health conditions is placed on equal footing with coverage for the treatment of medical conditions.

The Federal Parity Act does not, as Plaintiffs seem to imply, require that a health plan cover every single treatment to address mental health conditions, nor does the Act or its regulations state that any <u>specific</u> treatment must be covered.  *See* 78 Fed. Reg. 68240, 68246 (Nov. 13, 2013) ("[T]he Departments **did not intend to impose a benefit mandate** through the parity requirement that could require greater benefits for mental health conditions and substance use disorders than for medical/surgical conditions.") (emphasis added).  Instead, the Federal Parity Act looks to a plan's quantitative and nonquantitative "treatment limitations" to determine if there is disparity between the

---

[135] The cases cited in the Court's Rule 56(d) Order also clarified that Federal Parity Act claims should <u>not</u> be addressed under 29 U.S.C. § 1132(a)(1)(B).  (Dkt. 31 at 16).  For example, in *Christine S.*, the court held that because Section 1132(a)(1)(B) allowed plaintiffs to enforce their rights "under the terms of their plan," and Section 1132(a)(3) allowed claims to address "*any* act or practice that violates another substantive provision of ERISA *not* included in their benefits plan," claims seeking enforcement of the Federal Parity Act must be brought under Section 1132(a)(3).  428 F. Supp. 3d at 1219-20 (emphases added).

limitations placed on mental health coverage versus those placed on medical coverage. 29 C.F.R. § 2590.712(a). Quantitative treatment limitations are expressed numerically, such as the number of outpatient visits covered by the plan. *Id.* Nonquantitative treatment limitations (NQTLs) are non-numerical limitations on the scope of therapies, such as limitations on geographic location, facility type, drug formulary design, provider network admission, step therapies, and other similar medical management program design elements. 29 C.F.R. § 2590.712(c)(4)(ii). As the Court noted in its Rule 56(d) Order with regard to NQTLs:

> [T]he implementing regulations mandate that "any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health . . . benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other facts used in applying the limitation with respect to medical surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(4)(i). In other words, "[p]lans need not apply the *same* limitations to all benefits; rather, 'the processes, strategies, evidentiary standards, and other factors plans use [ ] to impose those limitations [have] to be *comparable* for all benefits." *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 827-28 (N.D. Ill. 2019).

(Dkt. 31 at 18) (emphases in original).

The Rule 56(d) Order also addressed what is needed to plead and establish a Federal Parity Act violation. (*Id.*). Although there is "no clear law" on the issue, "courts generally agree that plaintiff bringing a Federal Parity Act claim is not restricted to showing that the plan *expressly* discriminates against mental health or substance abuse treatment (*i.e.*, a facial claim), but may also challenge a coverage provision 'as applied,' that is, by showing that a facially neutral coverage term is applied disparately in practice." (*Id.* at 18-19) (quoting *Smith v. Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 389 (S.D. Ind. 2021); *Rula A.-S. v. Aurora Health Care*, No. 20-cv-1816-JPS, 2021 WL 3116143, at *4 (E.D. Wis. July 22, 2021); *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1238 (D. Utah 2019)). Whatever route is taken, the "ultimate question is whether the

plaintiff has plausibly [established] that his health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical and surgical services . . . ."  *Rula A.-S.*, No. 20-cv-1816-JPS, 2021 WL 3116143, at *4 (quoting *Smith*, 526 F. Supp. 3d at 388).

The Court previously found that Plaintiffs' original complaint failed to state a plausible claim under the Federal Parity Act.  Despite raising four treatment limitations that allegedly applied differently to mental health treatments, Plaintiffs' Amended Complaint still fails to allege either a facial or an as-applied violation.

### A.    Age-based coverage

Plaintiffs re-allege a facial violation of the Federal Parity Act asserting that the Plan includes an age-based coverage limitation that is more restrictive than treatment limitations for medical/surgical benefits.[136]  The Court previously rejected this alleged facial Parity Act violation.  (Dkt. 31 at 20).  As the Court noted, the only provision on the face of the Plan that limited ASD coverage based upon age is the provision relating to coverage for intensive-level services.[137]  The treatments Plaintiffs were seeking were not for intensive-level services.[138]  So, as before, "it is puzzling why plaintiffs are focused on a plan provision that has no relevance to this case."  (Dkt. 31 at 20).

Plaintiffs also seem to contend that GHC breached the Federal Parity Act by applying facially-neutral coverage terms in order to impose an age-based treatment limitation that is not imposed upon comparable medical/surgical benefits.[139]  This argument is also without merit.  GHC denied coverage based upon its determination that the treatments were experimental and investigational because the <u>reported research</u> differentiated between the evidentiary support for speech therapy for children under ten

---

[136] Am. Compl. at ¶¶ 94-95, 101.

[137] FOF ¶¶ 21-22; Dkt. 31 at 20.

[138] FOF ¶ 51.

[139] Am. Compl. at ¶ 102.

versus children over ten, with evidence supporting the therapy for children under ten but not for children over.[140] GHC and the Plan did not impose a treatment limitation defined by age; the medical research distinguished between the evidentiary research for children of different ages.

It is not uncommon for medical research to support the efficacy of treatments for one age group and not others. Therefore, it is not uncommon for GHC to approve coverage for some age groups and deny it for others as experimental and investigational. This practice applies to both mental health and medical/surgical benefits alike. For example, as noted in GHC's prior summary judgment motion, the Plan's coverage for "evidence-based" preventative services was set with reference to the United States Preventive Services Task Force's recommendations for the ages for which such services should be provided.[141]

Another example is the application of GHC's coverage for chiropractic care, which the Amended Complaint alleges to be a comparable medical/surgical benefit.[142] GHC's Policy 117 sets forth GHC's analysis of the chiropractic services that are covered by the Plan as evidence-based and which are excluded as experimental and investigational.[143] Policy 117 provides that chiropractic treatment sought for children under the age of 18 is considered medically necessary only when used to treat a "defined neuromusculoskeletal condition for which spinal manipulation therapy is an appropriate intervention."[144] Because GHC found that the chiropractic services most frequently requested by pediatric patients were not related to neuromusculoskeletal conditions, Policy 117 provides that all pre-service coverage requests submitted for chiropractic services for children under the

---

[140] *Id.* at ¶¶ 37-41.

[141] FOF ¶¶ 109-110. The U.S. Preventive Services Task Force recommendations on the age ranges for preventive screenings are available at: https://www.uspreventiveservicestaskforce.org/uspstf/

[142] Am. Compl. at ¶ 98, 110.

[143] FOF ¶ 112 and Ex. 15.

[144] FOF ¶ 115.

age of nine should be denied with a request to submit medical documentation.[145]  If submitted, GHC's Medical Director reviews the medical documentation to determine whether the requested chiropractic services are medically necessary for the less than nine-year-old child.[146]

The special review process for chiropractic claims submitted for patients under the age of nine is an age-based treatment limitation for a medical/surgical benefit.  Plaintiffs' argument that GHC and the Plan imposed age-based treatment limitations on ASD coverage that were not applied to comparable medical/surgical benefits is simply wrong.  Therefore, Plaintiffs' Federal Parity Act claim fails.  Neither the Plan's explicit coverage terms that distinguish coverage based upon the patient's age nor the application of those terms impose limitations upon ASD coverage that are not similarly applied to comparable medical/surgical benefits.

### B. Coverage of routine patient care for members in clinical trials

Second, Plaintiffs allege that GHC does not apply the experimental and investigational exclusion equally between mental health and medical/surgical benefits because, per Plaintiffs, the Plan provides coverage for certain experimental trials.[147] Plaintiffs have misread this coverage.

The Plan did not, in fact, cover the costs of experimental clinical trials.  Rather, the Plan covered members' routine patient care even if they were participating in clinical trials.[148]  In other words, the Plan did not cover the cost of experimental trials, but it did cover the routine care that patients would be entitled to receive whether they were in a

---

[145] *Id.* ¶ 116.

[146] *Id.*

[147] Am. Compl. at ¶ 96.

[148] FOF ¶¶ 118-119.  This coverage is mandated by 2005 Wisconsin Act 194, which provides that no health plan "may exclude coverage for the cost of any routine patient care that is administered to an insured in a cancer clinical trial [as defined by the statute] and that would be covered under the policy, plan, or contract if the insured were not enrolled in a cancer clinical trial." Wis. Stat. § 632.87(6)(b).  Notably, Wisconsin law does not mandate coverage for the clinical trial itself or any associated investigational services, items, or drugs.  *Id.*

trial or not, so long as the routine patient care was not itself investigational. The 2018 Certificate makes this coverage distinction readily apparent.[149] The 2018 Certificate provides that the following services are **<u>covered</u>**:

1. Routine patient care costs for Clinical Trials, which includes:

    a. Covered Health Benefits provided under the Plan in which the Member is enrolled;

    b. Conventional care or items that are typically provided outside of a Clinical Trial;

    c. Care required for administration of the Clinical Trial, clinically appropriate monitoring of the affects or the prevention of complications; and

    d. Care required or needed for reasonable and necessary care due to administration and/or completion of the Clinical Trial.

2. Coverage of routine patient care costs for Clinical Trials is subject to all the terms, conditions, restrictions, exclusions and limitations that apply to any Covered Health Service under this Benefit Plan, including the treatment coverage provided under the Plan, or contract of services performed by in-Network Providers and Out-of-Network Providers.[150]

The 2018 Certificate then goes on to address the **<u>non-covered</u>** services relating to clinical trials:

1. Non-routine patient care costs for the Clinical Trial, which includes:

    a. The Experimental, Investigational or Unproven Service, item, or device itself;

    b. Items and services that are provided solely to satisfy data collection ana analysis needs and that are not used in the direct clinical management of the patient; and

---

[149] In the 2018 Certificate, the Plan's coverage and exclusions relating to clinical trials are addressed in the coverage section of the Certificate as opposed to the definition section, where it is discussed in the 2016 and 2017 Certificates. The 2016 and 2017 Certificates do not separate out the covered and non-covered services as clearly as the 2018 Certificate does, but the coverage and exclusions are the same across all three Certificates. FOF ¶¶ 118-119.

[150] *Id.* ¶ 118.

    c. A service that is clearly inconsistent with widely accepted and established standards of care for a particular diagnosis.

2. Expenses for preventive Clinical Trials.

3. Items and services provided by the research sponsors free of charge for any individual enrolled in the Clinical Trial.[151]

The Plan did not provide coverage for experimental and investigational clinical trials, as Plaintiffs allege. It merely provided that if members were involved in experimental trials, the members would nonetheless be entitled to all other benefits offered by the Plan—nothing more, nothing less. This is not an example of a medical/surgical benefit given more preferential treatment than a mental health treatment, and Plaintiffs cannot establish a Federal Parity Act violation upon the Plan's coverage for non-experimental routine patient care provided to persons in clinical trials.

## C. Coverage for chiropractic services

Third, Plaintiffs allege that GHC covers non-evidenced-based medical/surgical benefits while excluding non-evidence-based mental health treatments. Plaintiffs' basis for this argument is the Plan's coverage for chiropractic services, which Plaintiffs deem to be not evidence-based.[152] Again, Plaintiffs' assessment of the Plan's coverage is misguided.

The Plan does provide some coverage for chiropractic services *if* the treatments are deemed to be medically necessary and other specified criteria are met.[153] Like its use of Policy 121—which GHC used to assist in reviewing the evidence supporting ASD treatments—GHC utilized a policy, Policy 117, that was designed to provide guidance as to which chiropractic services were medical necessary and which were experimental and

---

[151] *Id.*

[152] Am. Compl. at ¶¶ 98, 110. Interestingly, Plaintiffs have submitted numerous requests for coverage for chiropractic care for K.H., most recently in March 2022. (FOF ¶ 52). Therefore, Plaintiffs appear to believe there to be some value to chiropractic services.

[153] FOF ¶ 111.

investigational.[154]  GHC's determination that some chiropractic services were not experimental and investigational was based upon its review of multiple resources, including research briefs and clinical research performed by other major health insurers.[155]

GHC's process for determining which chiropractic services were evidence-based is the same process that it used in determining which ASD services were evidence-based. GHC reviewed the medical research and prepared summary guidance that discussed which treatments were supported by research and which were not.  Plaintiffs' allegation that GHC's policies for medical/surgical benefits applied less stringent evidentiary standards than it did for mental health benefits is baseless.[156]

The Plan's coverage for chiropractic services, and GHC's interpretation of that coverage in Policy 117, show that the Plan and GHC treated mental and surgical benefits the *same* as mental health benefits, not the opposite.  Accordingly, Plaintiffs cannot establish a Federal Parity Act violation with regard to the Plan's coverage for medically necessary and non-experimental chiropractic services.

### D.  Medical coverage for speech and occupational therapy

Plaintiffs allege that the Plan excludes speech and other therapies from coverage if the patient has ASD but provides coverage for the same therapies if the patient has a medical condition.[157]  In this instance, Plaintiffs are baldly misstating the coverage set forth in the Certificates.

For example, Plaintiffs allege that the Plan's benefits for "outpatient speech, physical and occupational therapy are typically covered when they are medically necessary under the policy."[158]  In truth, the Plan had an exclusion that referenced these

---

[154] *Id.* ¶ 112.

[155] *Id.* ¶ 114.

[156] Am. Compl. at ¶¶ 106-107.

[157] *Id.* at ¶¶ 101, 108.

[158] *Id.* at ¶ 108.

therapies by name, stating that "physical therapy, speech therapy, [and] occupational therapy" treatments were excluded as treatments for "chronic brain injuries," which included both mental health conditions (such as development delays) *and* medical conditions (such as a physical brain injury or cerebral palsy).[159]  The Certificates further expressly stated that sensory integration occupational therapy—the type of therapy Plaintiffs sought—was not covered to treat *any* condition, medical or mental health.[160]

The Plan did not single out children with ASD and provide them with coverage for fewer treatments than persons with medical conditions.  Rather, the Plan's coverage for speech and occupational therapy was identical for persons seeking the treatment for mental health or medical conditions.  Again, therapies treating chronic brain injuries—a medical condition—were never covered, and SI occupational therapy, whether requested to treat a mental health or medical condition, was never covered.  Thus, the Plan's medical and mental health coverage is on par.

Finally, Plaintiffs make a reference to the Plan's definition of "habilitative services," alleging that habilitative services are approved in certain instances but denied when used to treat children with ASD.[161]  Although the Certificates define "Outpatient Habilitation Services," no Certificate states that coverage is provided for any habilitation service.[162]  In fact, the 2017 Certificate expressly states that Outpatient Habilitation Services are *not* covered.[163]  A definition does not create coverage, and there is no indication from the face of the Certificates that coverage was provided for habilitation services to treat *any* medical or mental health condition.

* * *

---

[159] FOF ¶ 27 and Exhibits 2-4.

[160] *Id.* ¶ 28.

[161] Am. Compl. at ¶ 109.

[162] FOF ¶¶ 23-24.

[163] *Id.* ¶ 24.

Plaintiffs' Amended Complaint does not identify any treatment limitations applicable to mental health benefits that were not equally in place for medical/surgical benefits. Each of the alleged differences raised by Plaintiffs can be directly rebutted by the Plan's coverage and policy documents. Plaintiffs received a second bite at the apple and again came up short because there is no Federal Parity Act violation to find.

GHC denied K.H.'s pre-service requests for speech and occupational therapy for the same reason that it denied any number of requests for coverage of medical treatments—the treatments were experimental, investigational, and not supported by sufficient evidence. The Plan did not violate the Federal Parity Act in restricting its coverage of mental health benefits to treatments sufficiently supported by medical research. Because there is nothing in the Federal Parity Act that requires a health plan to provide coverage for a mental health treatment that its administrator reasonably determined is not evidence-based, GHC did not violate the Federal Parity Act in denying coverage for Plaintiffs' requested treatments. Therefore, GHC is entitled to summary judgment on Plaintiff's Federal Parity Act claim.

## IV. GHC Is Entitled to Summary Judgment on Count IV for Violation of Wisconsin's Autism Mandate.

Plaintiffs assert their fourth and final claim under Wisconsin law, alleging that Wisconsin's Autism Mandate, Wis. Stat. § 632.895, required GHC to provide coverage for Plaintiffs' requested treatments. For two reasons, Plaintiffs' Wisconsin law claim fails as a matter of law.

### A. Plaintiffs' claim under Wisconsin law fails on the merits.

Wisconsin's Autism Mandate, as set forth in Wis. Stat. § 632.895(12m), requires certain Wisconsin insurance plans to provide a specified level of coverage for "intensive-level services" and "nonintensive-level services" for the treatment of ASD. Most critically, the statute defines "intensive-level services" and "nonintensive-level services" as those that are "*evidence-based*" therapies. Wis. Stat. § 632.895(12m)(a)(3, 4). Further

definition is set forth in the statute's regulations, which likewise state that insurers are only required to cover intensive and nonintensive therapies that are "evidence-based." Wis. Adm. Code § Ins. 3.36(4)(a), (5)(a).

The Plan included the exact same limitation on coverage—coverage was provided for "evidence-based" treatments but not for those that lacked sufficient evidentiary support.[164] The Plan's coverage directly copies the language from Wisconsin's Autism Mandate so it could not have been in violation of it.

GHC expects that Plaintiffs may point to language in the mandate's regulations that states that "Intensive-level service" could include "evidence-based speech therapy and occupational therapy." Wis. Adm. Code § Ins. 3.36(1)(f). Even if the services that Plaintiffs sought were intensive-level as opposed to nonintensive-level,[165] this regulation does not assist Plaintiffs, as the regulation expressly provides that insurers are only required to cover intensive-level services for children "two years of age and before the insured is nine years of age." Wis. Adm. Code § Ins. 3.36(4)(a)(5). Therefore, under Wisconsin law, the Plan was not required to cover *any* intensive-level services to K.H. after the age of nine. The regulation's discussion and definition of nonintensive-level services (for which K.H. *was* eligible after the age of nine) makes no reference to speech or occupational therapy.

The plain language of the law and statute only required the Plan to provide coverage for evidence-based therapies, and—as discussed above—GHC reasonably relied upon national publications and independent experts to determine that speech therapy for children over ten and occupational therapy were not evidence-based treatments at the time Plaintiffs submitted their coverage requests. The Wisconsin Office of the Commissioner of Insurance ("OCI") agreed. When Plaintiffs submitted a complaint to the OCI in 2017 about GHC's denial of their request for occupational therapy

---

[164] FOF ¶¶ 21-22.
[165] *Id.* ¶ 51.

coverage, the OCI took no action against GHC or otherwise ordered that such coverage be provided.[166]

Wisconsin law simply did not require the Plan to cover treatments that GHC, in its discretion, determined were experimental, investigational, and lacking in sufficient evidentiary support of their effectiveness.  Instead, the law required the Plan to cover exactly what the Plan *did* cover—evidence-based therapies.  GHC's compliant coverage terms did not violate Wisconsin law.

## B.      There is no private right of action under the Wisconsin Autism Mandate.

Regardless, even if the Court disagrees with GHC and believes that Wisconsin law required coverage for the treatments at issue, GHC is nonetheless entitled to summary judgment on Count IV because there is no private right of action under Wis. Stat. § 632.895.  The interpretation of a statute is a question of law that is appropriate for summary judgment.  *Geiger v. Wis. Health Care Liab. Ins. Plan*, 538 N.W.2d 830, 832 (Wis. Ct. App. 1995).

A Wisconsin statute creates a private right of action only when: "(1) the language or the form of the statute evinces the legislature's intent to create a private right of action, and (2) the statute establishes private civil liability rather than merely providing for protection of the public."  *Grube v. Daun*, 563 N.W.2d 523, 526 (Wis. 1997).  *See also Kranzush v. Badger St. Mut. Cas. Co.*, 307 N.W.2d 256, 268 (Wis. 1981) (stating that clear legislative intent to create a private right of action is the touchstone for determining if such a right exists); *McNeill v. Jacobson*, 198 N.W.2d 611, 614 (Wis. 1972) (stating that the legislative intent to create a private right of action "is determined primarily from the form or language of the statute").

In *Grube*, the court found that Chapter 144 of the Wisconsin code, which addresses the discharge of hazardous substances, contains no private right of action because (1) the

---

[166] *Id.* ¶¶ 72-76.

chapter does not include a clear statement of intent by the legislature to create a private right of action, and (2) the statute's purpose of protecting public health and environment safety did not establish civil liability but merely sought to protect the public. 563 N.W.2d at 527-29. Similarly, here, Section 632.895 does not satisfy either the first or second element of the *Grube* test. There is no language in the statute (or in Chapter 632 as a whole) that indicates any intent to create a private right of action, nor does the statute contain any language that could possibly establish private civil liability.

Because Plaintiffs cannot assert a claim under Wis. Stat. § 632.895, GHC is entitled to summary judgment on Count IV of Plaintiffs' Amended Complaint.

## V.  GHC Is Entitled to Summary Judgment on Plaintiffs' Requests for Future Benefits and a Declaratory Judgment Because Such Requests Are Moot.

Since October 2020, following the release of new research, GHC approved claims for speech and occupational therapy as treatments for ASD.[167] Because GHC now approves the therapies as covered, any request by the Plaintiffs in this case that asks the Court to order GHC to make such approvals going forward is moot. *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (finding claim for benefits moot when plan decided to pay benefits, while stating that other alleged claims were not moot and could proceed).

Plaintiffs' "Prayer for Relief" in its Amended Complaint reiterates its request from their original Complaint to ask for (among other items) a declaration that Policy 121 is "void and unenforceable" because it excludes speech and occupational therapy as ASD treatments. However, GHC amended Policy 121 effective October 2020 to state that speech and occupational therapy had become evidence-based treatments and, therefore, had become covered by the Plan's ASD coverage.[168] Because Policy 121 no longer excludes speech and occupational therapy, Plaintiffs' request for declaratory relief is

---

[167] *Id.* ¶¶ 46, 48-50.

[168] *Id.* ¶ 45.

moot and should be dismissed. *See Killian v. Concert Health Plan*, 742 F.3d 651, 661 (7th Cir. 2013) ("In short, the mootness inquiry turns on whether the *relief sought* would, if granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).") (emphasis original) (internal citation omitted).

Plaintiffs do not expressly ask that the Court order GHC to approve future requests for speech and occupational therapy treatments, but they do generally request any "other and further relief" not otherwise set forth in their Amended Complaint. Any such relief must be backward-looking only, as GHC began providing the relief that Plaintiffs seek—approval of coverage for speech and occupational therapy—almost a year before Plaintiffs filed their Complaint. K.H.'s requests for coverage for speech and occupational therapy treatments have been approved since August 2021.[169] Because it is impossible to grant any forward-facing effectual relief, such relief is moot. *Pakovich*, 653 F.3d at 492 (stating that "if an event occurs . . . that makes it impossible for the court to grant any effectual relief . . . the [request for relief] must be dismissed").

If the Court allows Plaintiffs' claims to move forward, their relief must be limited to: (1) under Count I, out-of-pocket costs previously expended for treatment covered by the Plan (that were not otherwise paid by other sources); or (2) under Counts II and III, appropriate equitable relief to address GHC's past denial of claims.

## CONCLUSION

GHC reasonably exercised its discretion in determining that the Plan did not cover the speech and occupational therapy treatments that Plaintiffs requested. At the time Plaintiffs submitted their requests for coverage, the treatments did not have sufficient evidentiary support in the medical literature—a conclusion supported by the independent medical experts that GHC consulted. The Plan unambiguously only

---

[169] *Id.* ¶ 50.

covered evidence-based, non-experimental treatments, so GHC's fiduciary duties to the Plan as a whole *required* it to deny Plaintiffs' requests.

GHC did not arbitrarily impose an age-based treatment limitation. Rather, research existed that supported the effectiveness of the treatments for children of same ages and did not exist for children of other ages. When the medical community released additional evidence supporting the efficacy of the requested treatments, GHC revised its position, deemed the treatments to be evidence-based, and began approving requests for coverage.

For these foregoing reasons, Plaintiffs' claims each fail as a matter of law, and GHC respectfully requests that this Court grants summary judgment in GHC's favor on each of Plaintiffs' claims. Because Plaintiffs were already granted one opportunity to amend their complaint to address these issues, the Court should deny any additional requests for leave to amend.

Dated this 23rd day of June, 2022.

HUSCH BLACKWELL LLP
**Attorneys for Defendants**

By  */s/ Christopher A. Smith*
Christopher A. Smith, *admitted pro hac vice*
Elizabeth A. Bozicevic, *admitted pro hac vice*
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 (fax)
Christopher.Smith@huschblackwell.com
Elizabeth.Bozicevic@huschblackwell.com

Patrick S. Coffey, State Bar No. 1002573
555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Patrick.Coffey@huschblackwell.com

***Attorneys for Defendant Group Health Cooperative of South Central Wisconsin***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of June, 2022 a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

*/s/  Christopher A. Smith*