IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANGELA MIDTHUN-HENSEN and TONY HENSEN,
  as representatives of their minor Daughter, K.H., and
  on behalf of all others similarly situated,

                                   Plaintiffs,

v.

GROUP HEALTH COOPERATIVE OF SOUTH
CENTRAL WISCONSIN, INC.,

                                   Defendant.

OPINION AND ORDER

21-cv-608-slc

---

In this putative class action, plaintiffs Angela Midthun-Hensen and Tony Hensen contend that their health insurer, defendant Group Health Cooperative, violated the Mental Health Parity and Addiction Equality Act ("Parity Act"), 29 U.S.C. § 1185a, and certain provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, when it failed to approve their requests for speech and occupational therapy treatment for their daughter's autism. GHC's stated reason for the denials was that the treatments were not evidence-based treatments for autism in children aged 10 and over, and therefore were excluded under the plan's exclusion for experimental and investigational treatment.

In February 2022, defendant filed an early motion for summary judgment, which the court had authorized after conferring with the parties at the preliminary pretrial conference. Dkts. 12, 13. Briefing ensued on the question whether plaintiffs should be entitled to discovery before responding to the motion. Dkts. 23-30. On May 6, 2022, I entered an order concluding that: (1) plaintiffs were not entitled to discovery on their ERISA claim for improper denial of benefits because they did not qualify for an exception to the general rule limiting review to the administrative record; and (2) they were not entitled to discovery on their Parity Act claim because their complaint did not plausibly allege a Parity Act violation. 5/6/22 Op. and Ord., dkt.

31. However, I gave plaintiffs an opportunity to amend their complaint "solely with respect to their Parity Act claim," and set a deadline by which GHC could either renew or withdraw its summary judgment motion. *Id*.

On May 27, 2022, plaintiffs filed an amended complaint, dkt. 32, and on June 23, 2022 GHC renewed its summary judgment motion, dkt. 34. The court granted plaintiffs' unopposed motion to extend their response deadline; on July 25, 2022, plaintiffs renewed their Rule 56(d) motion, again asking to take discovery on their Parity Act claim.[1] Dkt. 45. For the reasons stated below, I am denying plaintiffs' motion.

BACKGROUND[2]

In their amended complaint, plaintiffs plead both facial and as-applied violations of the Parity Act. Dkt. 32, at ¶¶ 93-112. They allege, generally, that GHC applies coverage limitations requiring treatment to be "evidence-based" and not experimental or investigatory more restrictively to mental health treatment – specifically, to occupational and speech therapy for the treatment of autism in children aged 10 or older–than it does to comparable medical or surgical treatment. The amended complaint contains broad allegations to this effect, *see* ¶¶ 100, 111-112, as well as more specific allegations that purport to identify comparable medical analogues, specifically: (1) clinical trials for the treatment of cancer, cardiovascular disease or muscular skeletal disorders of the spine, hip or knees, ¶ 96; (2) chiropractic services, ¶¶ 98, 110; and (3) speech, physical and occupational therapy when requested to treat medical conditions, ¶108.

---

[1] Plaintiffs also ask the court to reconsider its ruling disallowing discovery to determine if GHC acted in an arbitrary and capricious manner when it denied K.H.'s request for coverage. *See* dkt. 46, at 19. That request is denied.

[2] The background facts and legal discussion pertaining to the Parity Act that are set out in this court's May 6, 2022 order, dkt. 31, are incorporated herein by reference.

In its brief in support of its motion for summary judgment, GHC rebuts each of these claims. Dkt. 35, at 39-45. In support, it relies on the language of the Plan Certificates and Policy 121, both of which are part of the administrative record. However, GHC does adduce some extra-record evidence, namely Policy 117, which it represents is a policy document prepared by GHC to aid it in evaluating whether chiropractic treatments were evidence-based and not experimental/investigational. Meyer Dec., dkt. 37, ¶¶ 35-37, and exh. 15. According to GHC, Policy 117 shows that GHC's process for determining which chiropractic services were evidence-based is the same process it used in determining which treatments for autism were evidence-based: GHC reviewed the medical research and prepared summary guidance that discussed which treatments were supported by research and which were not. Dkt. 35, at 44.

Plaintiffs filed a response to the motion, accompanied by a request under Fed. R. Civ. P. 56(d) that the court allow plaintiffs to take discovery on the Parity Act claims before ruling on GHC's motion.[3] Dkts. 45-53. Plaintiffs ask the court to stay summary judgment until they can take discovery on their "as applied" Parity Act claims.[4] The motion has been fully briefed and is ready for decision by the court.

---

[3] Plaintiffs' counsel submitted a declaration in support of the Rule 56(d) motion, dkt. 47, which he later sought to amend after GHC pointed out that it lacked the specifics required by Rule 56(d). Dkt. 57 and Exh.57-1. GHC does not object to the amended declaration but says it fails to cure the defects of the original, namely, it does not specify what discovery plaintiffs are seeking or why such discovery is needed to respond to defendant's motion. Dkt. 58. I am granting plaintiffs' motion for leave to file an amended declaration and I have considered this amended declaration in deciding the instant motion.

[4] Plaintiffs make a perfunctory argument that they also need discovery on their facial Parity Act claims, but their argument refers solely to "complementary medicine," a potential analog that plaintiffs never alleged in the amended complaint. Br. in Supp., dkt. 46, at 19. As discussed in the body of this opinion, I will not allow plaintiffs to take discovery on claims that they have not pled and will not allow them a second opportunity to amend their complaint.

3

ANALYSIS

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catreett*, 477 U.S. 317, 322 (1986). The mechanism for ensuring that adequate discovery occurs before summary judgment is defined in Fed. R. Civ. P. 56(d). *Id*. at 326. Rule 56(d) allows time for a nonmovant "to obtain affidavits or declarations or take discovery" related to a motion for summary judgment "[i]f the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

As an initial observation, GHC uses language in its summary judgment brief that calls to mind a Rule 12(b)(6) argument.[5] However, I do not understand GHC to be arguing that plaintiffs have failed in their amended complaint to state a claim under the Parity Act. To the contrary, as plaintiffs point out, GHC not only has responded to the merits of plaintiffs' allegations, it has done so in part by relying on evidence outside the pleadings, namely, Policy 117.

That said, the parties' submissions reveal a fundamental dispute about what it is that plaintiffs have fairly alleged in their amended complaint. GHC asserts that plaintiffs may proceed on an "as applied" Parity Act claim only insofar as they have identified a specific medical/surgical analog in the amended complaint, as they concede plaintiffs have done with respect to chiropractic treatment. Plaintiffs, on the other hand, appear to believe that, having

---

[5] *E.g,.* dkt. 35, at 39 ("Plaintiffs' Amended Complaint still fails to allege either a facial or an as-applied violation.")

generally alleged that GHC applied its "evidence based/experimental standard" to plaintiffs' claim for certain therapies to treat autism more restrictively than it does to medical/surgical benefits, plaintiffs are entitled to discover how GHC applies its "evidence based/experimental standard" to *any and all* medical/surgical benefits in the same classification, of which chiropractic care was *just one example*. Plaintiffs argue that requiring them to list "every other type of health care treatment for which GHC applied a different coverage standard" goes beyond Fed. R. Civ. P. 8(a)'s notice pleading requirement and would impose an impossible burden on plaintiffs asserting Parity Act claims. In support, plaintiffs cite cases holding that a plaintiff who states a plausible "as applied" challenge under the Parity Act is not subject to the ordinary limitations on discovery that apply to ERISA claims brought under § 1132(a)(1)(B) and are not likely, without discovery, to have specific information about the clinical reasons for a particular disparity in the way mental health and medical services are treated. Dkt. 46. at 10-12.

I agree with plaintiffs' contention that information concerning the processes, strategies or other factors utilized by a plan administrator in applying a particular treatment limitation to an analogous medical/surgical treatment will typically be in the possession of the plan administrator. I disagree with plaintiffs' suggestion that Parity Act plaintiffs may unlock the door to essentially unfettered discovery simply by parroting in their complaint the language of the Parity Act and alleging generally that the plan administrator does not apply the relevant treatment limitation as restrictively to "medical/surgical benefits" as it does to "mental health benefits." Indeed, even the cases cited by plaintiffs require a Parity Act plaintiff to allege "that the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit *to which it is being compared*." Dkt. 46, at 7 (citing cases, emphasis

5

added). *See also David P. v. United Healthcare Ins. Co.*, No. 219CV00225JNPPMW, 2020 WL 607620, at *17 (D. Utah Feb. 7, 2020) (Parity Act plaintiffs "must plausibly allege a disparity between the specified treatment limitation applied to the mental health/substance abuse services for which they sought benefits as compared to the treatment limitations applied to the *covered medical/surgical analog*.") (citation omitted, emphasis added); *Smith v. Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 389 (S.D. Ind. 2021) (plaintiff compared his urine analysis tests administered at intensive outpatient program for substance abuse to blood glucose monitoring and other treatments authorized for diabetes and compared his outpatient program to "outpatient surgical facilities, intensive day rehabilitation and rehabilitation and chemotherapy treatment"); *M. v. United Behav. Health*, No. 218CV00808HCNDAO, 2020 WL 5107634, at *2 (D. Utah Aug. 31, 2020) (plaintiff alleged that Plan provided less coverage for E.'s residential mental health and substance abuse treatment than it would have provided for analogous residential treatment to medical or surgical patients). Under the Parity Act, the question is not how GHC "cover[s] medical/surgical care compared to mental health care" *in general*, as plaintiffs assert, *see* Reply Br., dkt. 56, at 4, but rather whether there is a disparity in the way GHC applied the relevant treatment limitation to the mental health benefits sought by plaintiff as compared to limitations that GHC would apply to a covered medical/surgical analog.

Turning to this more specific question, plaintiffs' motion for a stay discusses two covered medical benefits that they say are analogous: (1) chiropractic treatment; and (2) complementary medicine, which encompasses various forms of therapy such as acupuncture, homeopathy, energy work and "various types of eastern practices." But as GHC points out, plaintiffs' amended complaint says nothing about complementary medicine. Rather, this appears to be yet another

6

new theory in plaintiffs' ever-evolving Parity Act claim. *See generally* 5/6/22 Op. and Ord., dkt. 31, at 21-23. Plaintiffs offer no reason why complementary medicine is not mentioned in the amended complaint except to argue generally that their amended complaint was not meant to present an exhaustive list. If the court limits discovery only to those analogs identified in the amended complaint, argue plaintiffs, then it should allow them to amend their complaint yet again to list "the known other outpatient in-network treatments [*sic*] medical/surgical treatments which did not have the same treatment limitations as the mental health treatments." Dkt. 56, n.3.

Plaintiffs' off-hand request for permission to amend their complaint yet again is denied. Plaintiffs' own case citations establish that identifying a medical/surgical analogue is an element of a Parity Act claim. Complementary medicine appears in the plan certificate that plaintiffs have had since the outset of their lawsuit. With the case law and the plan documents in hand, plaintiffs should have been able to articulate all of their bases for a Parity Act claim long ago. In the face of GHC's challenges, plaintiffs already have received one opportunity to amend their complaint. Neither Rule 1 nor Rule 15 requires that they be given another shot at this juncture.

This leaves the question whether plaintiffs have shown a need for discovery with respect to chiropractic care, which is the only other analog discussed in their Rule 56(d) submissions. Plaintiffs maintain they are entitled to discovery to determine if GHC applied the same "evidentiary level and investigatory rigor" to claims for chiropractic care that it applied to conclude that the speech and occupational therapy sought by K.H. was not "evidence-based." Plaintiffs' counsel submits links to articles found during his own personal internet research that he claims suggests that some types of chiropractic care are not evidence-based. However, GHC

has produced Policy 117, which explains which limited types of chiropractic care it covers and discloses a list of sources GHC utilized in reaching that determination. Some of the references identified in Policy 117 are policies adopted by other large health insurers, which in turn contain reviews of medical literature and studies concerning the effectiveness of chiropractic care in treating certain conditions. *See, e.g.,* GHC Policy CM.MED.117, dkt. 37-15, at 5, ref. no. 3.

Plaintiffs say that Policy 117 is insufficient because it does not explain what "processes, strategy, evidentiary standards or other factors" GHC used "when locating, reviewing, and analyzing GHC's sources regarding chiropractic care." Reply Br., dkt. 56, at 2. But apart from invoking these buzzwords from the Parity Act and declaring Policy 117 insufficient, plaintiffs do not say what kind of additional information would prove their claim that GHC does not apply its requirement that treatments be "evidence-based" as stringently to chiropractic care as it did to plaintiffs' claim for speech and occupational therapy for K.H.

Although I agree with plaintiffs that Rule 56(d) does not require the nonmovant to present the court with the specific discovery requests that it seeks from the moving party, it *does* require the nonmovant to present "specified reasons" why it cannot present "essential" facts without discovery. Plaintiffs have not proffered what types of documents they would request, what sort of interrogatories they would ask, or what, if any, depositions are necessary for them to obtain the information they think they need, much less why this information is essential to opposing GHC's summary judgment motion. As GHC points out, Policy 117 includes a list of sources GHC utilized in determining that certain chiropractic treatments were evidence-based; therefore, plaintiffs are able, at this time, to compare and contrast these sources with those located by counsel that he claims state otherwise. Counsel's affidavit in support of the motion

8

to stay, even as amended, does not present specific reasons why this does not suffice to respond to GHC's summary judgment motion. Therefore, plaintiffs' motion is denied.

In light of this ruling, the court will allow plaintiffs to supplement their opposition to GHC's summary judgment motion solely on plaintiffs' Parity Act claim.

## ORDER

IT IS ORDERED that;

1. Plaintiffs' motion for leave to file an amended declaration from counsel, dkt. #57, is GRANTED.

2. Plaintiffs' motion to stay summary judgment, dkt. #45, is DENIED.

3. Plaintiffs may have until October 18, 2022, to supplement their opposition to defendant's motion for summary judgment on plaintiffs' Parity Act Claim, with defendant's reply in support of its entire motion due November 8, 2022.

Entered this 27th day of September, 2022.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge