UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

**ANGELA MIDTHUN-HENSEN and
TONY HENSEN,** as representatives of
their minor daughter, **K.H.,** and on behalf
of all others similarly situated**,**

                Plaintiffs,

        v.                                 Case No. 3:21-cv-00608

**GROUP HEALTH COOPERATIVE OF
SOUTH CENTRAL WISCONSIN,**

                Defendant.

---

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

NOW COMES the plaintiff, by her attorneys, Gingras Thomsen & Wachs, by Paul A. Kinne, who hereby states the following as her Supplemental Response to the Defendant's Motion for Summary Judgment.

**INTRODUCTION**

The Court should deny Defendant's Motion for Summary Judgment, filed before any discovery has taken place. Even without discovery, the record evinces several material questions of fact precluding summary judgment.

**BACKGROUND**

In July 2022, the plaintiff moved for leave to conduct discovery. In part, the plaintiff claimed that to respond adequately to the defendant's motion for summary judgment, the plaintiff needed to conduct discovery into whether Group Health Cooperative (GHC) applied the same

1

standards and methods to its determination that pediatric chiropractic care was evidence-based, but that speech and physical therapy for older children with autism was not.

On September 27, 2022, the Court denied that motion. It noted that GHC provided the basis for its chiropractic coverage decision in Policy 117. Dct. 59, p. 8, *citing* Dct. 37-15. It pointed out that the plaintiff was able to compare and contrast the sources identified in Policy 117 with those identified by the plaintiff, which stated that chiropractic care was not evidence based. Dct. 59, p. 8. The plaintiff would also have the opportunity to compare the sources in support of Policy 117 with the literature K.H. provided during the administrative appeal process. The Court further observed that Policy 117 included references to policies adopted by other large health insurers, which in turn contained reviews of medical literature and studies concerning the effectiveness of chiropractic care in treating certain conditions. Dct. 59, p. 8. The Court concluded by giving the plaintiff a chance to supplement her opposition to the motion for summary judgment on the Parity Act claims.

For the reasons that follow, the Court should conclude that there is an issue of material fact with respect to whether GHC violated the Parity Act by covering chiropractic care for pediatric patients but not covering care for treatment sought by K.H.

### GROUP HEALTH COOPERATIVE DID NOT APPLY THE SAME STANDARD TO K.H.'S CLAIM FOR COVERAGE AS IT APPLIED TO THE DETERMINATION TO PROVIDE COVERAGE FOR PEDIATRIC CHIROPRACTIC CARE

From the beginning of this case, GHC has claimed emphatically that it considered K.H.'s evidence that physical and speech therapy were evidence-based treatments for children aged 10 years and older. From the beginning, GHC claimed that in addition to considering the evidence presented by K.H., it also conducted its own investigation looking for evidence that physical and

speech therapy was an evidence-based treatment for autism, but it was not able to find that evidence. Because that evidence was lacking, it denied the coverage that K.H. sought.

Group Health Cooperative also claims that it applied the same methods and standards to its determination to cover chiropractic treatment directed at pediatric patients (less than 18 years of age). Dct. 37-15, p. 919. According to policy 177, chiropractic treatment for pediatric patients is considered medically necessary when the treatment is directed at a clearly defined neuromusculoskeletal condition for which spinal therapy is an appropriate intervention. Dct. 37-15, p. 919.

In her primary brief, K.H. cited to medical literature from the National Institutes of Health (NIH) published in the same time range as the studies upon which GHC relied to deny K.H.'s coverage request. The literature presented by the plaintiff states *no* chiropractic care is evidence based. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4591574/

Moreover, reviews from 2002 and 2010 also concluded that the effectiveness of chiropractic care for adolescents had not been proven.
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2890688/
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2794701/

Without the benefit of discovery, it is impossible for the plaintiff to explain how GHC would have missed multiple studies cataloged by NIH stating that chiropractic care for children and adolescents was not evidence-based. Considering that plaintiff's counsel was able to find these studies through a simple Google search, at a minimum, an issue of fact exists concerning whether GHC applied the same standards and methods in deciding to cover pediatric chiropractic care. Kinne Decl., ¶ 4.

Before even considering the supposed support in Policy 117 for the decision to cover pediatric chiropractic care, the undisputed facts show the following. Group Health Cooperative denied K.H.'s coverage for inpatient in-network care / outpatient in-network care (speech and physical therapy) because the scientific literature did not clearly identify speech and physical therapy as an evidence-based treatment. In fact, several studies to which GHC cited in its denial decision stated that there was a lack of scientific evidence to support coverage. At the same time, there were studies stating that pediatric chiropractic care was not evidence-based. "[T]here is currently little evidence to inform chiropractic care of children." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2890688/

"No studies have been published on chiropractic treatment of back pain in a pediatric population." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2794701/

If GHC had applied the same standard to both coverage issues, both pediatric chiropractic care and speech and physical therapy for children with autism over ten years of age would have been covered. Thus, there are questions of fact concerning whether GHC in fact applied the same standards.

Adding an analysis of the references listed in Policy 117 only makes the plaintiff's case stronger. First, GHC lists five policy references: Aetna, Cigna, United Health Care, Humana and Magellan Care. Dct. 37-15, p. 922. Those policy references are all to policies from 2021, reflecting the state of the science well after GHC denied coverage to K.H. GHC cites to one study – *Spinal Manipulation for Treatment of Chronic Low Back Pain* – but that study was published in 2020, which is also after the time frame relevant to this case. Dct. 37-15, p. 922. Without discovery, it is not possible to identify or determine the basis for the decision to cover pediatric chiropractic care

in 2017, 2018 and 2019, but the Court should *not* consider policies from after 2020 as support for the methods and standards applied from 2017 to 2019.

Second, three of the sources listed cannot be accessed by the plaintiff: the Humana policy, the Hayes Medical Technology report, and the Magellan Care policy. Kinne Decl., ¶ 5, Dct. 37-15, p. 922. Plaintiff is unable to determine what these conclude, or the basis for the conclusions in them.

Third, with respect to the policies the plaintiff can access, neither the Aetna policy nor the United Health Care policy makes any statements about the effectiveness of pediatric chiropractic care. Kinne Decl., ¶ 6, https://www.uhcprovider.com/content/dam/provider/docs/public/policies/comm-medical-drug/manipulative-therapy.pdf, Dct. 37-15, p. 922. They are completely devoid of any reference demonstrating that there was a scientific consensus that pediatric chiropractic care was effective, medically necessary or evidence based.

One of the references, however, did address whether pediatric chiropractic care was evidence based. The Cigna policy states:

> Chiropractic care is most often employed as a treatment for spinal conditions including low-back pain, cervical pain, and thoracic spine disorders. Chiropractic care may be used as treatment for extremity joint dysfunction and temporomandibular joint (TMJ) dysfunction. Most studies involving the long-term safety and effectiveness of spinal manipulation have been done on adult populations. *Thus, no generalizations can be made regarding the long-term safety and effectiveness of spinal manipulation for other populations.*

Dct. 37-15, p. 922, Kinne Decl., ¶ 7 (emphasis supplied).

The references prove that the standards and methods applied to coverage for pediatric chiropractic care were different from (and less stringent than) the standards and methods applied to coverage for speech and physical therapy for older children with autism. The evidence that

5

pediatric chiropractic care was evidence-based was non-existent. Several scientific publications specifically stated the evidence was not developed enough to determine whether pediatric chiropractic care was effective. At any rate, the evidence upon which GHC relied to cover pediatric chiropractic care never stated that pediatric chiropractic care *was* effective. At the time the coverage decision was made, K.H. presented evidence that speech and physical therapy were effective. Rejecting K.H.'s evidence, while covering pediatric chiropractic care, is clear-cut evidence that the standards and methods applied to the decision to cover K.H.'s outpatient / inpatient in-network autism treatment were different from those applied to outpatient / inpatient pediatric chiropractic care. At a minimum, there is an issue of fact with respect to whether GHC violated the Parity Act when it failed to cover the care K.H. sought.

## CONCLUSION

Chiropractic care has been around for a long time. The science supporting its overall effectiveness is flimsy, and the science supporting the effectiveness of pediatric chiropractic care is non-existent. At least, GHC has cited to no concurrent evidence upon which it claims to have relied when it decided to cover pediatric chiropractic care. It covered pediatric chiropractic care because it is broadly popular care for neuromuscular conditions. It covered pediatric chiropractic care because there is a bias toward coverage of care for physical conditions against treatment for mental health. That is exactly the kind of discrimination the Parity Act was designed to combat. For the reasons stated above, the motion for summary judgment should be denied.

Dated this 18th day of October, 2022.

**GINGRAS THOMSEN & WACHS LLP**
Attorneys for Plaintiff

*s/ Paul A. Kinne*
Paul A. Kinne (SBN: 1021493)

<u>MAILING ADDRESS</u>

8150 Excelsior Drive
Madison, WI 53717
Phone: (608) 833-2632
Fax: (608) 833-2874
Email: [kinne@gtwlawyers.com](mailto:kinne@gtwlawyers.com)