# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

ANGELA MIDTHUN-HENSEN and TONY
HENSEN, as representatives of their minor
Daughter, K.H., and on behalf of all others
similarly situated,

      Plaintiffs,

          Case No. 3:21-cv-00608-slc

    v.

GROUP HEALTH COOPERATIVE OF SOUTH
CENTRAL WISCONSIN,

      Defendant.

## DEFENDANT GROUP HEALTH COOPERATIVE OF SOUTH CENTRAL WISCONSIN'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' AMENDED COMPLAINT

## INTRODUCTION

Regardless of the complicated path and extensive briefing that it has taken to get to this stage, at this time it is clear that the parties agree on all material facts:

- What documents set forth the Plan's coverage and the specific terms of the coverage that is relevant here[1];

- That the treatments at issue would be covered only if they were evidence based, medically necessary, and not experimental or investigational[2];

- That the type of occupational therapy sought by Plaintiffs was "sensory integration" or "sensory intervention therapy," which was not covered under the Plan to treat any condition[3];

---

[1] Dkt. 36 at ¶¶ 6-7, 14-29; Dkt. 50 at ¶¶ 6-7, 14-29.

[2] Dkt. 36 at ¶¶ 14-22; Dkt. 50 at ¶¶ 14-22.

[3] Dkt. 36 at ¶¶ 28, 39; Dkt. 50 at ¶¶ 28, 39.

- That Plaintiffs were not seeking coverage for intensive-level services to treat ASD[4]; and

- That GHC has accurately submitted the administrative record for each of Plaintiffs' appeals, and that GHC's Proposed Findings of Fact accurately describe the background of those appeals.[5]

The parties also agree on the appropriate legal standard to be applied. Under Count I, Plaintiffs agree that GHC had discretion to construe the Plan's terms and make coverage decisions, and that, as a result, the Court should review those decisions under the arbitrary and capricious standard.[6] Under Plaintiffs' Federal Parity Act claim, the parties agree that Plaintiffs must establish that a treatment limitation was applied more stringently to mental health benefits than to medical benefits.[7]

Finally, Plaintiffs do not dispute that GHC is entitled to summary judgment on at least two points. *First*, Plaintiffs made no response to GHC's request for summary judgment on Count II, Plaintiffs' claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). The breach of fiduciary duty claim is either subsumed by Count I (to the extent it rests on the argument that GHC denied claims that *were* covered by the Plan) or captured by Count III (to the extent it rests on a violation of the Federal Parity Act). Plaintiffs do not contend that they are alleging any other fiduciary breach, and GHC is, therefore, entitled to summary judgment on Count II. *Second*, Plaintiffs made no response to GHC's argument that it is entitled to summary judgment on Plaintiffs'

---

[4] Dkt. 36 at ¶ 51; Dkt. 50 at ¶ 51.

[5] Dkt. 36 at ¶¶ 53-70, 77-107; Dkt. 50 at ¶¶ 53-70, 77-107.

[6] Pls.' Opp. (Dkt. 48) at p. 17.

[7] *Id.* at 23, 26.

requests for future benefits and a declaratory judgment, so GHC should be granted summary judgment on those points.

Despite the lengthy briefing and extensive proposed findings of fact submitted, the parties' disagreements boil down to two issues:

1. Whether GHC abused its discretion in determining that the at-issue treatments were not evidence-based despite the materials submitted by Plaintiffs during those appeals; and

2. Whether GHC applied a stricter test to evaluate the evidentiary support for mental health (here, ASD) treatments than it did for medical (here, chiropractic) treatments.

Both of these questions are ripe to be resolved on the record based upon the application of the undisputed law to the undisputed facts, and both should be resolved in GHC's favor. Therefore, GHC respectfully asks that the Court grant GHC summary judgment on all claims in Plaintiffs' Amended Complaint.

## I.     The Court Should Disregard Plaintiffs' Arguments Regarding Complementary Medicine and Conflicts of Interest.

As an initial point, the Court has already resolved two arguments made in Plaintiffs' Opposition. No facts or law have changed since the Court's ruling on these issues, so the Court's decisions should remain as the law of the case.

*First*, Plaintiffs' Opposition attempts to make arguments regarding supposed preferential treatment for "Complementary Medicines."[8] In its order denying Plaintiffs' Rule 56(d) request for discovery, the Court agreed with GHC that Plaintiffs' Amended Complaint made no reference to complementary medicine, even though Plaintiffs had

---

[8] *See* Pls.' Opp. (Dkt. 48) at 8, 10, 30.

access to the case law and plan documents at the time they amended their complaint.[9] Absent any allegations about complementary medicine in the Amended Complaint, the Court refused to allow Plaintiffs discovery into it.[10]

Similarly, the Court should not permit Plaintiffs to defeat summary judgment based upon arguments and allegations that they have not pled. Plaintiffs should not have brought a lawsuit alleging a Federal Parity Act claim until they had a Federal Parity Act claim to state. They should be held to the claims they have pled and not permitted to evolve their case every time GHC exposes the flaws in their arguments. Plaintiffs are giving off the appearance of making up a claim as they go, which is entirely improper. GHC moved for summary judgment on the allegations pled, and the Court should only consider the allegations pled in deciding the present motion.

*Second*, Plaintiffs' Opposition includes a brief attempt at arguing that GHC had a conflict of interest in deciding Plaintiffs' benefits claims, such that the discretion afforded to GHC should be tempered.[11] In ruling upon Plaintiffs' first request for Rule 56(d) discovery, the Court found that Plaintiffs had not satisfied their burden of identifying a conflict of interest.[12] Plaintiffs' Opposition makes no additional arguments beyond those previously rejected by the Court, so the Court's analysis of the arguments should remain the same.

---

[9] Dkt. 59 at 6-7.

[10] *Id.* at 7.

[11] Pls.' Opp. at 17.

[12] Dkt. 31 at 11-12.

**II. GHC Is Entitled to Summary Judgment on Count I Because It Did Not Abuse Its Discretion In Determining that the Treatments Were Not Evidence Based.**

Plaintiffs agree that the arbitrary and capricious standard applies to the review of GHC's actions under Count I. Under this standard, GHC's coverage denial must be upheld as long as "it is **possible to offer a reasoned explanation**, based on the evidence," for the denials, or "the decision is **based on a reasonable explanation** of relevant plan documents." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321-22 (7th Cir. 2007) (emphasis added). In other words, GHC is entitled to summary judgment on Count I unless the Court finds its actions to be "downright unreasonable." *Id.* at 321.

Here, GHC denied Plaintiffs' claims because it determined that the Plan only covered non-investigational, evidence-based treatments, and the treatments Plaintiffs were requesting lacked sufficient evidentiary support for their efficacy at the time they were made. Plaintiffs agree that only evidence-based treatments were covered.[13] Therefore, the only question is whether GHC acted "downright unreasonably" in determining that that the treatments were not evidence based.[14]

GHC's decision was based upon two sources. First, GHC relied upon the National Standards Project's analysis and categorization of which treatments were established by medical research.[15] Second, GHC looked to independent experts and

---

[13] Dkt. 50 at ¶¶ 18-19, 22.

[14] Plaintiffs also argue that there is a dispute of fact as to whether GHC reviewed Plaintiffs' claims as non-intensive level therapies. (Pls.' Opp. at p. 21-22). Plaintiffs agree that K.H. was not eligible for intensive-level therapies (Dkt. 50 at ¶ 51), so the only reason that GHC gave the coverage requests *any* consideration is because the treatments might have fallen under the Plan's coverage for non-intensive level therapies. Otherwise, GHC would have denied the claims because K.H. had exhausted her intensive-level services.

[15] Dkt. 36 at ¶¶ 35-41.

their analysis of whether new research had been issued since the National Standards Project's release that had moved the treatments from experimental to established.[16]

The National Standards Project is not a single, stand-alone study. Rather, the report reviewed *all* research into ASD studies, excluded those studies it deemed unreliable, and then listed which treatments had support in the studies and which did not.[17] The National Standards Project found *no* support for sensory intervention therapy – the type of occupational therapy that Plaintiffs undisputedly were requesting.[18] The report found that "Language Training (Production)" was an established treatment only for children 3-9 years old, but for children over that age, the studies did not establish the treatment's efficacy.[19]

Recognizing that the National Standards Project was released in 2015, GHC sought independent expert advice as to whether new evidence had been released by 2018-2019 that provided evidentiary support for Plaintiffs' requested treatments.[20]

---

[16] *Id.* at ¶¶ 89-91, 101-05.

[17] *Id.* at ¶ 36.

[18] *Id.* at ¶ 40.

[19] *Id.* at ¶ 37. Plaintiffs' Opposition notes that the National Standards Project does not expressly refer to "speech therapy." (Dkt. 48 at 18). That is true – at no point does the National Standards Project state that sufficient research supported speech therapy is an evidence-based treatment for ASD. If anything, the absence to an express reference to speech therapy in a resource that lists evidence-based treatments cuts against Plaintiffs' argument. However, instead of flatly denying requests for speech therapy because it was not referenced in the National Standards Project, GHC construed the National Standards Project's review of "Language Training (Production)" treatment to be equivalent to speech therapy since the description of the treatments were largely equivalent. *Compare* Dkt. 37-8 at GHC_00319 (describing "Language Training (Production)" treatments as the use of "various strategies to elicit verbal communication) *with* Dkt. 37-14 at GHC_00722-723 (describing the speech therapy treatments from K.H.'s providers as using various strategies to assist with "social language development"). The National Standards Project found that "Language Training (Production)" was an evidence-based treatment for children between the ages of 3-9. (Dkt. 36 at ¶ 37).

[20] Dkt. 36 at ¶¶ 89-91, 101-05.

GHC specifically asked two independent experts in ASD whether evidence supported Plaintiffs' treatments, and it provided the experts with the materials Plaintiffs had submitted as part of their appeals, including the records from their providers.[21]  Both independent experts told GHC, "no," that the therapies were not backed by medical evidence.[22]

Plaintiffs' only argument is that GHC should have relied upon the research studies they submitted in their appeals instead of the National Standards Project and the independent experts.  But that argument disregards the standard of review.  Under the arbitrary and capricious standard, it is not the court's role to "reweigh the evidence" or to become the "arbiter of which scientifically-based guidelines the Plan must accept." *Exbom v. Cent. St., Se. & Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1144 (7th Cir. 1990); *Neal v. Christopher & Banks Comprehensive Major Med. Plan*, 651 F. Supp. 2d 890, 909 (E.D. Wis. 2009).[23]  Instead, the Court must determine whether GHC's actions were clearly unreasonable – whether it was unreasonable to rely upon the sources it did, and whether its decisions were unreasonable interpretations of those sources.

---

[21] *Id.* at 89, 101-02, 104.  Plaintiffs' Opposition tries to disregard the opinions of the independent experts by stating that GHC failed to provide them K.H.'s medical records, her providers' notes, or the studies that she submitted with her appeals.  (Dkt. 48 at p. 19).  However, in their response to GHC's Proposed Findings of Fact, Plaintiffs admitted that GHC provided the independent experts with those documents. (Dkt. 50 at ¶ 102).

[22] Dkt. 36 at ¶¶ 91, 104-105.

[23] The court in *Neal* went on to explain further that the determination of which "scientifically-based guidelines" a plan should rely upon is a decision "entrusted to the Plan Administrator, not the Court."  651 F. Supp. 2d at 909.  It continued: "The fact that [the defendant administrator] has relied upon a scientifically-based guideline of a professional medical specialty organization, namely [a] rule adopted by many transplant programs and supported by the studies described in the two articles, provides a rational basis for its decision.  It may not be the decision this Court would make, but the Court is unable to say that it is arbitrary or capricious." *Id.*

GHC's reliance upon the National Standard Project and the independent experts' reviews instead of the sources submitted by Plaintiffs is objectively reasonable. Plaintiffs submitted mostly solo studies, and not all of them even supported the argument that the treatments had evidentiary support.[24] It cannot be deemed "downright unreasonable" for GHC to rely upon a report that looked at *all* reputable studies and upon experts that could be trusted to be aware of the current status of *all* research, as opposed to rejecting that guidance and turning to the isolated studies submitted by Plaintiffs.[25]

Plaintiffs' Opposition never points the Court to any specific study they submitted in their appeals to argue why that study is more reliable than those that GHC utilized. Plaintiffs wanted GHC to rely upon other studies, but they do not provide any reason why their studies were more definitive, more trustworthy, or more worthy of consideration that the sources GHC used.

There can be many reasonable ways that GHC could have reviewed Plaintiffs' claims and appeals. Even giving Plaintiffs the benefit of all doubt, perhaps their proposed approach could be viewed as just as reasonable as the approach GHC chose. But Plaintiffs' opinion that GHC got the analysis wrong is simply not equivalent to

---

[24] Dkt. 36 at ¶ 66. Another study submitted by Plaintiffs, the "Evidence-Based Practices for Children, Youth and Young Adults with Autism Spectrum Disorder," likewise categorized sensory integration therapy as among those studies lacking sufficient empirical support. (*See* appeal in the record at Dkt. 37-14 at GHC_00762 and more legible version of same document at Dkt. 53-10 at p. 26 of report).

[25] Plaintiffs criticize GHC for not providing an explanation in its denial letters for why it did not give weight to the studies Plaintiffs submitted. (Dkt. 48 at 19-20). As the Court previously stated, this argument reflects a misunderstanding of GHC's obligations – all GHC must do is "give the applicant . . . the reason for the denial of benefits; he does not have to explain to him why it is a good reason." Dkt. 31 at 13 (quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996)).

saying that GHC is liable.  Rather, under the arbitrary and capricious standard, the question before the Court is whether GHC's actions – its reliance upon the National Standards Project and independent experts' analysis – was among the reasonable approaches that GHC could have taken.  The answer to that question is an objective "yes."  GHC is entitled to summary judgment on Count I, Plaintiffs' claim under 29 U.S.C. § 1132(a)(1)(B).

**III.  GHC Is Entitled to Summary Judgment on Plaintiffs' Federal Parity Act Claim Because It Did Not Apply a More Stringent Evidentiary Standard to <u>Reviewing the Evidence Supporting Mental Health Benefits.</u>**

To survive summary judgment on their Federal Parity Act claim, Plaintiffs must establish that some mental health treatment limitation was not treated on par with a medical treatment limitation.  They cannot provide "examples" and ask the Court to trust that more is out there, and they cannot simply say that "the treatment limitations were different" without pointing to evidence about *how* they were different.  Plaintiffs are also bound to the allegations they have pled and cannot be permitted to continue to evolve a claim that should have been fully developed at the time Plaintiffs filed their initial complaint.

Regardless, Plaintiffs' arguments in support of their **facial** Federal Parity Act claim are fully meritless because Plaintiffs never point to any disparate language on the face of the Member Certificates.  Their Opposition states that the Plan had "different standards for mental health benefits," but it never explains what those different standards were and certainly makes no citation to them.  Instead, Plaintiffs contend that GHC's *review* of treatments as "experimental" or "evidence based" is more restrictive

for mental health coverage than for medical coverage.[26]  This is an argument about an as-applied disparity, not a facial disparity.  Because Plaintiffs have pointed to no unequal treatment in the black-and-white language of the Member Certificates themselves, GHC is entitled to summary judgment on Plaintiffs' facial Federal Parity Act claim.

The only concrete **as-applied** Federal Parity Act violation alleged in the Amended Complaint and supported in Plaintiffs' Opposition is that GHC applied a higher bar for Plaintiffs' mental health treatments to be deemed evidence-based than it did for medical chiropractic care to be treated as such.  Again, the burden is on Plaintiffs to provide evidence of *how* a treatment limitation was applied differently, and that burden is not satisfied by merely stating that it is different, as Plaintiffs do repeatedly.

At best, Plaintiffs present evidence of studies that they claim call into question the effectiveness of chiropractic care.  However, while these studies find little evidence supporting the effectiveness of chiropractic care for treating diseases and other ***non***-musculoskeletal conditions, Plaintiffs' studies acknowledge that evidence ***does*** support the effectiveness of chiropractic treatments for musculoskeletal treatments, like back pain and sports injuries.[27]  GHC determined that chiropractic care was an evidence-based treatment for musculoskeletal conditions only – it covered the exact conditions that Plaintiffs' own studies stated were supported by evidence.[28]

---

[26] Dkt. 48 at 27-28.  Plaintiffs' Supplemental Opposition makes no reference to their facial Federal Parity Act argument.  (Dkt. 60).

[27] *See* Dkt. 53-1 at "Abstract" on p. 1 and "Sport Injuries," "Neck pain," and "Upper Extremity" at p. 8.

[28] Dkt. 36 at ¶ 115.

Plaintiffs particularly question the evidence supporting the effectiveness of chiropractic care for children, disregarding the facts that (1) GHC conducts a stricter review of requests for chiropractic care for children in order to ensure that they are treating musculoskeletal conditions and not something else,[29] and (2) Plaintiffs made several requests for coverage for chiropractic care for K.H., thereby acknowledging their beliefs in its value.[30]  Plaintiffs note that the materials GHC used in crafting its policy on chiropractic care make no reference to the effectiveness of the treatment on adults vs. children, but that argument misses the point.  When the research distinguishes between the evidence supporting a treatment for different ages, then GHC's coverage guidance will distinguish between age groups.  When the research does *not* distinguish between ages – for example, when it finds no support for sensory integration therapy for *any* age or does find support for musculoskeletal chiropractic care generally – then GHC's coverage guidance will not differ depending upon the age of the patient.

Plaintiffs were able to access three of the references GHC used to create its Policy 117 on the medical necessity of chiropractic care coverage.  All three provide that chiropractic care is medically necessary for the treatment of musculoskeletal conditions, and none of them made any distinction between the effectiveness of the treatment depending upon a patient's age.[31]

---

[29] *Id.* at ¶¶ 116-17.

[30] *Id.* at ¶ 52.

[31] *See* Dkt. 62-1 at "Coverage Rationale" on p. 1; Aetna Clinical Policy at Policy ¶ I, "Medical Necessity," available at https://www.aetna.com/cpb/medical/data/100_199/0107.html; Cigna Medical Coverage

GHC did not apply a stricter standard in determining that Plaintiffs' ASD treatments lacked evidence than it did in determining that there was evidentiary support for chiropractic care to treat musculoskeletal conditions. Regardless of whether a treatment is designed for a mental health or a medical condition, GHC reviews the available literature and adopts the approach supported by the majority of the evidence.

It is GHC's obligation as a fiduciary to the Plan as a whole to deny claims that its resources deem to be experimental and investigational at the time they are made. Sometimes those benefits are for mental health treatments like Plaintiffs', and sometimes they are for medical treatments, like chiropractic care for non-musculoskeletal conditions. Plaintiffs have no evidence to create a material dispute that GHC applied its rationale differently, and GHC is entitled to summary judgment on Plaintiffs' Count III Federal Parity Act claim accordingly.

**IV.**    **GHC Is Entitled to Summary Judgment on Plaintiffs' State Law Claim.**

The merits of Plaintiffs' Count IV claim for violation of Wisconsin's Autism Mandate are tied to the merits of their ERISA and Federal Parity Act claims – Wisconsin law requires insurance plans to cover "evidence-based" therapies, and, as set forth above, GHC reasonably determined that the treatments sought by Plaintiffs were not evidence-based. Therefore, GHC is entitled to summary judgment on the merits of Count IV.

Policy at "Guidelines," ¶ 1, p. 2, available at
https://static.cigna.com/assets/chcp/pdf/coveragePolicies/medical/CPG278_chiropractic_care.pdf

Nonetheless, even if Plaintiffs were able to construct an argument—and they have not—Wisconsin's Autism Mandate does not create a private right of action. Plaintiffs really do not dispute this point. Plaintiffs cite to the same controlling legal authority that GHC does, *Grube v. Daun*, 563 N.W.2d 523 (Wis. 1997).[32] *Grube* held that a Wisconsin statute creates a private right of action **only** when "the language or the form of the statute evinces the legislature's intent to create a private right of action," **and** "the statute establishes private civil liability rather than merely providing for protection of the public." *Id.* at 526. In their Opposition, Plaintiffs acknowledge that the Wisconsin Autism Mandate, Wis. Stat. § 632.895, "is silent with respect to actual enforcement."[33] That silence is definitive, as under *Grube*, the statute must affirmatively evidence a private right of action.

The absence of any indication in the statute supporting the legislature's intent to create a private right of action means that no private right of action exists. GHC is, therefore, entitled to summary judgment on Count IV.

<u>CONCLUSION</u>

For the reasons set forth herein and in GHC's opening brief, GHC respectfully requests that the Court grant it summary judgment on all claims in Plaintiffs' Amended Complaint.

---

[32] Pls.' Opp. at p. 31.

[33] *Id.*

13

Dated November 8, 2022.

**HUSCH BLACKWELL LLP**
**Attorneys for Defendants**

By    _/s/   Elizabeth A. Bozicevic_

Christopher A. Smith, *admitted pro hac vice*
Elizabeth A. Bozicevic, *admitted pro hac vice*
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
(314) 480-1505 (fax)
Christopher.Smith@huschblackwell.com
Elizabeth.Bozicevic@huschblackwell.com

Patrick S. Coffey, State Bar No. 1002573
555 E. Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
Patrick.Coffey@huschblackwell.com

*Attorneys for Defendant Group Health*
*Cooperative of South Central Wisconsin*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of November, 2022 a copy of the foregoing document was filed with the Clerk of the Court to be served upon counsel of record via the Court's ECF system.

_/s/   Elizabeth A. Bozicevic_